**FINE REALTY, INC., Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**No. 4–60–Civ.–125.**

United States District Court
D. Minnesota,
Fourth Division.
Oct. 10, 1962.

Joseph A. Maun, St. Paul, Minn., and Maurice L. Grossman, Minneapolis, Minn., for plaintiff.

Miles W. Lord, U. S. Atty., Minneapolis, Minn., Louis F. Oberdorfer, Asst. Atty. Gen., John T. Piper, Edward S. Smith, Rufus E. Stetson, Jr., Department of Justice, Washington, D. C., for defendant.

DEVITT, Chief Judge.

This is an action for the recovery of $22,324.59, plus interest, which is alleged by the taxpayer, Fine Realty, Inc., to be an overpayment of its income tax for the taxable year 1955.

The taxpayer filed its federal income tax return for 1955 showing taxable net income of $10,369.22 and a tax liability of $3,110.77, which it paid. In 1959, the Commissioner of Internal Revenue recomputed taxpayer's net income—resulting in a tax deficiency of $13,719.77. A $6,005.10 penalty for fraud was also imposed. Taxpayer paid the tax deficiency, the fraud penalty, and the interest of $2,599.72 on May 12, 1959.

In this action the taxpayer contests the action of the Commissioner in:

"(1) disallowing a $9,000 salary deduction for Mrs. Adolph Fine, president of the taxpayer.

"(2) disallowing certain travel and entertainment expenses amounting to $2,189.64; depreciation on auto amounting to $1,042.11; charitable contributions amounting to $417.50; miscellaneous expenses amounting to $173.19.

"(3) disallowing to the taxpayer the $25,000 surtax exemption as provided for in the 1954 Internal Revenue Code, § 11(c), 26 U.S.C.A. § 11 (c).

"(4) imposing an accumulated earnings tax as provided for in the 1954 Internal Revenue Code, § 531.

"(5) imposing a 50 per cent fraud penalty as provided for in the 1954 Internal Revenue Code, § 6653 (b)."

At the opening of trial, counsel for the taxpayer waived any claim to a refund based upon numbers 2 and 5, supra; that is, upon deductions for travel and entertainment expenses, auto depreciation, charitable contributions, miscellaneous expenses and upon the imposition of the 50 per cent penalty for fraud. Thus, the Court here is concerned only with three issues—disallowance of Mrs. Fine's salary, disallowance of the surtax exemption, and imposition of the accumulated earnings tax.

The factual setting of this litigation has been before the Court on another occasion. See James Realty Co. v. United States, 176 F.Supp. 306 (D.Minn. 1959), affirmed, 280 F.2d 394 (8th Cir. 1960). The multiple incorporation methods used by Adolph Fine to carry on his construction and real estate business were there, and are here, the focal points of the controversy over the tax liability of the individual corporate taxpayer. Originally, Adolph Fine conducted his business enterprises as an individual. In 1944, Adolph Fine, Inc., was formed to carry out the business previously conducted by Fine as an individual. In 1946, Fine Realty Company (not to be confused with the taxpayer, Fine Realty, Inc.) was formed for the alleged purpose of owning and operating investment real estate. In 1949, the taxpayer, Fine Realty, Inc., was formed for the alleged purpose of selling the buildings which had been constructed by Adolph Fine, Inc. Later, the taxpayer devoted some of its activities to the purchase of large tracts of raw land which, when subdivided, were sold to the development companies in exchange for exclusive sales agreements. Between 1950 and 1953 some

nine additional corporations were formed as "development companies." The development company would sign an exclusive contract with Adolph Fine, Inc., for the construction of the homes, and with the taxpayer, Fine Realty, Inc., for the sale of the homes. The eleven corporations were operated by Mr. Fine, although Mrs. Fine was the president of several, including the taxpayer. For this executive position, she was paid $9000—the corporate deduction for which is one of the issues here to be decided. In addition to the control which Mr. Fine personally exerted over all of the corporations, the bookkeeping and all clerical work were performed by the same group of employees, all of whom were officed together.

There is sufficient evidence in the record to demonstrate that the bookkeeping performed for the Fine corporations involved a "balancing out" of the income for all of the corporations so that the income would not normally exceed $25,000 for any one corporation in a given year. The following abbreviated chart, Defendant's Exhibit A, demonstrates quite clearly just how successfully this was accomplished.

(Abbreviated Schedule Reflecting Defendant's Exhibit A)

INCOME FROM CERTAIN FINE CORPORATIONS

| NAME | DATE OF IN-CORPORATION | Income Per Tax Return | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 |
| ADOLPH FINE, INC. | 3-6-44 | 202,268 | 24,864 | 25,889 | 45,084 | 13,804 | 21,062 | loss (−26,097) |
| FINE REALTY COMPANY | 7-17-46 | 20,106 | 8,493 | 9,729 | 9,538 | 10,925 | 11,145 | loss (−9,920) |
| FINE REALTY, INC. | 11-2-49 | 34,212 | 18,309 | 23,314 | 22,466 | loss (8,256) | 10,369 | loss (−5,766) |
| WESTPORT ROW, INC.[1] | 8-22-50 | | 24,837 | 21,972 | 17,933 | 13,983 | 4,115 3,448 | |
| EDINA HOMES, INC.[2] | 7-18-50 | | None | 22,520 | 23,948 | 16,500 | 10,621 | |
| TEXA-TONKA, INC.[3] | 3-23-50 | | 23,077 | 21,261 | 22,457 | 9,248* | | |
| MORNING PARK, INC. | 11-8-50 | | None | 19,488 | 24,068 | 14,571 | 8,538 | 5,365 |
| TEXAS INVESTMENT CO.[4] | 8-1-52 | | | 24,472 | 24,851 | 9,032 | 22,391 | 17,691 |
| NORTHWESTERN DEVELOPMENT CO. | 10-7-52 | | | | 21,817 | 20,032 | 24,253 | 23,015 |
| JAMES REALTY CO. | 11-24-52 | | | | 24,699 | 14,524 | 11,794 | 4,674 |
| JEFFREY REALTY CO.[5] | 11-24-52 | | | | 18,822 | 22,232 | 8,070 | |
| UNIVERSAL DEVELOPMENT CO. | 12-2-53 | | | | | 11,448 | 16,713 | 12,335 |
| TRUST PROPERTIES CO. (Partnership for Fine children) | Organized 6-1-52 | | | Gross profits on sale of houses | | | 24,122 | 6,936 |

* Includes $5446.00 of rental income.
[1] Merged into parent company at 6-30-55
[2] Merged into Morning Park, Inc. 7-31-55
[3] Merged into Texa-Tonka Shopping Center, Inc. at 9-1-54
[4] Merged into Diversified Development Co. at 11-30-56
[5] Merged into James Realty Co. 9-30-55

While the evidence is not without dispute in regard to this "balancing out" of the income as between the several corporations, an employee, June Myslajek, stated that was the common practice for several years and the following, Defendant's Exhibit K, would appear to substantiate the employee's testimony:

"4-27-57

"JUNE:

"cc: Bud Martin

"This is a memorandum concerning the land status of the following companies given to you to determine what company should own and develop LVH 3rd Addn. This will de-

pend upon the possible profit status for the year 1957 in each of these companies.

AF"

The "AF" is presumably Adolph Fine and "JUNE" is presumably June Myslajek.[1]

Although the Fines, in both testimony and briefs, have vigorously protested that no "balancing out" was performed, the Court in regarding the Exhibits A and K, is impressed that "one picture is worth ten thousand words."

 The first issue is as to the propriety of the deduction of $9,000.00 for Mrs. Fine's salary. The evidence in this regard is inconclusive. On the one hand, there was testimony by Mrs. Fine and by her husband that as president of Fine Realty, Inc., she performed valuable services for that corporation. On the other, there was testimony by employees of the taxpayer that Mrs. Fine did not perform any such services. There is evidence that Mrs. Fine did in fact perform some services for the Fine enterprises, considered collectively, although it is difficult to find that the services were for the exclusive benefit of the corporation which paid her. The Court is of the view, however, that in determining the reasonableness of the salary involved it must look beyond the corporate entity, Fine Realty, Inc., to the entire structure of the Fine enterprises. This factor, along with the fact that the combined total salaries of Mr. and Mrs. Fine, as shown on their joint return for 1955, were $54,000.00 (not a patently excessive amount), leads the Court to conclude that the salary deduction was not unreasonable and was improperly disallowed.

The next issue is as to the correctness of the Commissioner's disallowance, under section 269 of the 1954 Code, of the surtax exemption as provided for in sec-

tion 11(c) of the 1954 Code. The Commissioner contends that the taxpayer, Fine Realty, Inc., was created by the Fine family for the principal purpose of "evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy * * *." Internal Revenue Code of 1954, § 269. This section further provides that if tax avoidance is the *principal* purpose, then "such deduction, credit, or other allowance shall not be allowed." This Court has already held that the *creation* of a corporation may fall within the language, "acquire." See James Realty Co. v. United States, supra.

 In determining whether the principal purpose in acquiring Fine Realty, Inc., was tax avoidance as defined in section 269, it is necessary to scrutinize the motives given by the person making such acquisition. In this case, Mr. Fine testified at great length as to why the taxpayer was formed and as to why the other Fine corporations were formed. The testimony as to the purposes for bringing each of the corporations into existence is pertinent in determining the reasons for the taxpayer's creation. Mr. Fine *initially* listed a number of factors leading to the decision to incorporate: (1) efficiency of operation, (2) separation of basic activities, (3) limitation of risk, (4) assistance in estate planning, and (5) retention of sales commissions otherwise going to outside interests. Mr. Fine did not mention taxes until prodded frequently by the counsel for defendant. And then taxes were listed as only a "secondary influence." An examination of the entire record, and in particular the cross-examination of Mr. Fine, leads the Court to the conclusion that the principal purpose for acquiring the taxpayer was evasion of income taxes by the securing of an additional surtax

---

[1]. June Myslajek, is an admitted embezzler of funds from the Fine corporations. For this reason, taxpayer urges that her testimony be disregarded as merely an attempt to "get even" with Mr. Fine or

because she was to receive an "informer's fee." The Court, however, appraises her testimony in this regard as forthright and credible.

exemption. The factors listed above are superficially legitimate. Such factors, however, are no more than a recitation of the factors normally given for a decision to incorporate. They need not be taken at face value. The Court is free, and under an obligation, to inquire beyond the words themselves in order to determine if they have any substance. It appears that the business operations of Mr. Fine could have been equally well handled through Adolph Fine, Inc. as with a multitude of corporations. The factors given have little substance and are of doubtful reality. They tend to disguise the only real purpose of such an operation— avoidance of federal income tax.

■ There are many legitimate reasons for employing the corporate method of conducting a business, but it cannot be used solely or principally as an instrument of tax avoidance. The following lengthy quotation from Aldon Homes, Inc., 33 T.C. 582, 596–597 (1959), presents an excellent summary of the law and authorities in this field:

"It is axiomatic that taxpayers have the right to mold business transactions in such a manner as to minimize the incidence of taxation, for no taxpayer is obligated to pay more tax than the law demands of him. United States v. Isham [17 Wall. 496] 84 U.S. 496 [21 L.Ed. 728]; Gregory v. Helvering, 293 U.S. 465 [55 S.Ct. 82, 79 L.Ed. 645]; United States v. Cumberland Public Service Co., 338 U.S. 451 [70 S.Ct. 280, 94 L.Ed. 251].

"In Higgins v. Smith, 308 U.S. 473 [60 S.Ct. 355, 84 L.Ed. 406], the Supreme Court although recognizing that '[a] taxpayer is free to adopt such organization for his affairs as he may choose,' stated:

"'On the other hand, the Government may not be required to acquiesce in the taxpayer's election of that form for doing business which is most advantageous to him. The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is *unreal or a sham* may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute. To hold otherwise would permit the schemes of taxpayers to supersede legislation in the determination of the time and manner of taxation. It is command of income and its benefits which marks the real owner of property.' [Emphasis supplied.]

"In National Investors Corp. v. Hoey, (C.A.2) 144 F.2d 466, 468, Judge Learned Hand pointed out that:

"'to be a separate jural person for purposes of taxation, a corporation must engage in some industrial, commercial, or other activity besides avoiding taxation: in other words, that the term "corporation" will be interpreted to mean a corporation which does some "business" in the ordinary meaning; and that escaping taxation is not "business" in the ordinary meaning.'

"In Commissioner v. Court Holding Co., 324 U.S. 331, 334 [65 S.Ct. 707, 89 L.Ed. 981], the Supreme Court stated:

"'The incidence of taxation depends upon the substance of a transaction. * * * To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress.'

"As was earlier stated by the Supreme Court in Gregory v. Helvering, supra, 'To hold otherwise would be to exalt artifice above reality, and to deprive the statutory provisions in question of all serious purpose.'

"The above cases make it clear that a taxpayer may adopt any form he desires for the conduct of his business and that form cannot be ignored merely because it results in a

tax saving. However, to be afforded recognition the form the taxpayer chooses must be a viable business entity, that is, it must have been formed for a substantial business purpose or actually engage in substantive business activity."

In addition, the holding in James Realty Co., supra, is applicable here. Taxpayer, however, attempts to distinguish James Realty Co. in that here the taxpayer was allegedly formed to take over a *new* business, whereas the James Realty Company was one of nine development companies performing basically the same functions. See John P. Wagner, 17 C.C.H. Tax Ct. Mem. 569, 949 (1958); Hiawatha Home Builders, Inc., 36 T.C. Mem. 491 (1961). However, in the above cases there was sufficient evidence of other purposes for the creation of the taxpayer to distinguish them from the instant case. Furthermore, the Court is satisfied that the business which the taxpayer conducted was not so much a *new* business as it was an old business conducted in a new manner. The business was taken over from the Fine Realty Company. Mr. Fine testified that the taxpayer was formed to take over the low risk brokerage business. The purchase of land was not such a novel venture as to make this case distinguishable from James Realty Co., supra.

█ The Court finds that the principal purpose for the creation of Fine Realty, Inc., by Adolph Fine was tax avoidance by securing the benefit of an additional surtax exemption which he would not otherwise have enjoyed. The surtax exemption of the taxpayer was properly disallowed.

The final issue is as to the correctness of the Commissioner's imposition of an accumulated earnings tax. The pertinent provisions of the Internal Revenue Code of 1954 are the following:

Section 531:

"In addition to other taxes imposed by this chapter, there is hereby imposed for each taxable year on the accumulated taxable income (as defined in section 535) of every corporation described in section 532, an accumulated earnings tax * * *."

Section 532:

"(a) *General rule.*—The accumulated earnings tax imposed by section 531 shall apply to every corporation * * * formed or availed of for the purpose of avoiding the income tax with respect to its shareholders or the shareholders of any other corporation, by permitting earnings and profits to accumulate instead of being divided or distributed. * * *"

Section 533:

"(a) *Unreasonable accumulation determinative of purpose.*—For purposes of section 532, the fact that the earnings and profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax with respect to shareholders, unless the corporation by the preponderance of the evidence shall prove to the contrary. * * *"

Section 537:

"For purposes of this part, the term 'reasonable needs of the business' includes the reasonably anticipated needs of the business."

At the outset, it is helpful to set out summaries of the taxpayer's 1955 income statement and balance sheet taken from its tax return. These will be considered in conjunction with a summary chart of Defendant's Exhibit B showing the earned surpluses of the taxpayer and other Fine corporations for the years 1952–1955:

### STATEMENT OF PROFIT AND LOSS

| | | |
|---|---|---|
| Commissions Received on Sales | | $81,340.10 |
| Less Commissions Paid on Sales | | (23,041.10) |
| Less Financing Expenses on Sales | | (22,31ᴜ.55) |
| Gross Profit | | $35,982 45 |
| Add Other Income | $ 5,094.80 | |
| Less Expenses | 30,130.10 | −25 035.30 |
| | | $10 947.15 |

### BALANCE SHEET

#### Assets

| | |
|---|---|
| Cash | $ 16,647.67 |
| Notes and Accounts Receivable | 55,710.53 |
| Buildings | 4,791.60 |
| Land | 43,401.34 |
| Other | 2,89ᴜ.36 |
| Total Assets | $123 441 50 |

#### Liabilities

| | |
|---|---|
| Accounts Payable | $ 45,750.50 |
| Accrued Expense | 5,901.20 |

#### Capital

| | |
|---|---|
| Capital Stock | 1,000.00 |
| Earned Surplus | 70,789.80 |
| Total Liabilities & Capital | $123,441.50 |

### EARNED SURPLUS OF HOME BUILDING COMPANIES
(From Defendant's Exhibit B)

| | Years Ended in | | | |
|---|---|---|---|---|
| | 1952 | 1953 | 1954 | 1955 |
| Adolph Fine, Inc. | 301,313.95 | 326,896.29 | 336,559.16 | 349,319.00 |
| Fine Realty, Inc. | 55,511.20 | 71,256.13 | 63,531.35 | 70,789.80 |
| Westport Row, Inc. | 33,861.04 | 46,414.08 | 56,259.48 | 59,140.11* |
| | | | | 61,492.89* |
| Edina Homes, Inc. | 16,100.23 | 32,874.52 | 45,357.40 | 54,512.94 |
| Texa-Tonka, Inc. | 31,627.72 | 46,001.47 | 52,475.03** | |
| Morning Park, Inc. | 13,641.95 | 30,496.85 | 40,696.70 | 46,673.26 |
| Texas Investment Co. | 16,324.61 | 33,720.58 | 40,042.83 | 55,716.84 |
| Northwestern Development Co. | | 15,271.86 | 29,764.24 | 47,327.49 |
| James Realty Co. | 0 | 17,289.33 | 27,456.42 | 35,712 53 |
| Jeffrey Realty Co. | 0 | 13,175.27 | 28,766.40 | 34,360.77 |
| Universal Development Co. | 0 | 0 | 8,013 56 | 19,712.51 |
| | 468,380.70 | 633,396.38 | 728,922.57 | 775,618.03 |

\* Merged into Fine Realty Co. at 7–31–55
\*\* Merged into Texa-Tonka Shopping Center in 1954

The basic issue here is whether the earnings and profits of the taxpayer were permitted to accumulate beyond the reasonable needs of the business and, if the accumulation was unreasonable, whether the taxpayer has shown that the accumulation was not for the purpose to avoid the income tax. The taxpayer has the burden of explaining away an unreasonable accumulation of earnings and profits. Internal Revenue Code of 1954, § 533, supra.

The taxpayer's sole explanation for the retention of some $70,000 of earned surplus is that it was needed to make purchases of raw land. It is questionable whether such a general, undetailed purpose meets the standards of definiteness and specificity required in this Circuit. See, e. g., American Metal Products Corp. v. Commissioner, 387 F.2d 860 (8th Cir. 1961). But, at all events, there was no specific showing of a definite need for such an inordinate accumulation of surplus by this taxpayer during 1955.

According to Fine, raw land was usually purchased on installment contracts and segments of it were released as needed. Then, funds obtained from sales of the first lots were used in paying off the contract price of the remaining lots—resulting in the need for a relatively small amount of funds. Furthermore, the entire Fine enterprise had available to it a large amount of cash which could be, and was, loaned from one corporation to another as the need arose.

In view of the interrelation of all of the Fine corporations, it is logical to look beyond the taxpayer in determining the issue of unreasonable accumulation. See James Realty Co. v. United States, supra. The Court has reasoned, supra, that the reasonablenss of Mrs. Fine's salary should be determined by looking at the operations of all of the Fine enterprises rather than solely at the taxpayer. The logic of this is equally persuasive in dealing with the unreasonable accumulation issue. The established policy of making inter-corporate loans and the consequent lack of a need for large amounts of cash by each of the several companies demonstrate the inseparability of the financial dealings of the Fine corporations. Furthermore, this Court has upheld the Commissioner's determination that the taxpayer was formed for the principal purpose of securing an additional surtax exemption, and in this determination we viewed the status and operations of all the Fine corporations. Thus it seems quite proper to consider not only the earned surplus of taxpayer but also the earned surplus of all of the Fine corporations. When this is done, the conclusion is inescapable that the Commissioner properly imposed the additional tax. Taking the evidence most favorable to the plaintiff, taxpayer in 1955 had an earned surplus of $70,789.80, and the Fine Companies together had an earned surplus of $775,618.03. These figures tend to establish the unreasonableness of the accumulation, and the failure of the taxpayer to offer any substantial evidence to justify such large amounts confirms the unreasonableness.

The taxpayer asserts that it was not the purpose of Congress to allow "the taxing authorities to be second-guessing the responsible managers of corporations as to whether and to what extent profits should be distributed or retained * * *." Casey v. Commissioner, 267 F.2d 26, 30 (2d Cir. 1959). With this, the Court agrees. There comes a point, however, at which someone must "second-guess" the taxpayer. That point is reached when the large accumulation serves no business need, present or anticipated, but rather serves another purpose—the avoidance of income taxes upon the distribution. The instant case presents such a situation.

It is the finding of the Court that the taxpayer has failed to show by a preponderance of the evidence that the unreasonable accumulation of earnings and profits was not made for the purpose to avoid the income tax. The Commissioner properly imposed the accumulated earnings tax upon the taxpayer. Kerr-Cochran, Inc. v. Commissioner, 253 F.2d 121 (8th Cir. 1958); Egan, Inc. v. Commissioner, 236 F.2d 343 (8th Cir. 1956); Bride v. Commissioner, 224 F.2d 39 (8th Cir. 1955).

Defendant will please prepare appropriate Findings.