OPINION The issues presented for our decision are whether all or any of the petitioners were incorporated for the principal purpose of evasion or avoidance of Federal income tax, within the purview of section 269, by securing the benefit of the surtax exemption. Section 11(d) provides an exemption of $25,000 in imposing the surtax on the taxable income of a corporation. The right to this exemption is sometimes qualified in the application of section 269(a), which provides, in pertinent part, as follows: SEO. 269. ACQUISITIONS MADE TO EVADE OR. AVOID INCOME TAX. (a) In GENERAL. — If— (1) any person or persons acquire, or acquired on or after October 8, 1940, directly or indirectly, control of a corporation, * * * ⅜ * * * * ' ♦ * and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then the Secretary or his delegate may disallow such deduction, credit, or other allowance. For purposes of paragraphs (1) and (2), control means the ownership of stock possessing at least 50 percent of the total combined voting power of all classes of stock entitled to vote or at least 50 percent of the total valne of shares of all classes of stock of the corporation. Section 1.269-1 (a) of the Income Tax Regulations states that “The term ‘allowance’ refers to anything in the internal revenue laws which has the effect of diminishing tax liability. The term includes, among other things, * * * an exemption, * * We are not involved here with any question regarding the 50-percent-control requirements of section 269(a); the record reveals that Richard and Duane Merritt acquired 100 percent of the stock of petitioners Dredge Clinton, Inc., and Dredge Cherokee, Inc., and acquired 50 percent of the stock of petitioner Southern Dredging Corp. It is well established that the acquisition of control, within the meaning of section 269, includes the formation of new corporations. James Realty Co. v. United States, 280 F. 2d 394 (C. A. 8, 1960); Kessmar Construction Co., 39 T.C. 778 (1963), affd. 336 F. 2d 865 (C.A. 9, 1964). It is also well established that section 269 applies where, as in the instant case, it is the acquired corporation which obtains most directly the benefit of the particular deduction, credit, or allowance involved. Sec. 1.269-3(a) (2), Income Tax Regs.; James Realty Company v. United States, supra. In defining “the principal purpose,” within section 269, section 1.269-3 (a) (2) of the Income Tax Regulations provides the following guidance: If the purpose to evade or avoid Federal income tax exceeds in importance any otter purpose, it is tte principal purpose. This does not mean ttat only those acquisitions fall within the provisions of section 269 which would not have been made if the evasion or avoidance purpose was not present. The determination of tte purpose for which an acquisition was made requires a scrutiny of the entire circumstances in which the transaction or course of conduct occurred, in connection with the tax result claimed to arise therefrom. * * * The petitioners, consequently, must establish by a preponderance of the evidence that a tax evasion or avoidance purpose did not exceed in importance any other purpose. Commodores Point Terminal Corporation, 11 T.C. 411 (1948). The determination of the principal purpose in acquiring control over a corporation is a question of fact that depends upon the intent of the person at the time he acquires such control. Airport Grove Corp of Polk County, et al. v. United States, 408 F. 2d 870 (C.A. 5, 1969). This person’s testimony as to his reasons for bringing each of the corporations into existence is obviously quite pertinent to the determination of the principal purpose. Fine Really, Inc. v. United States, 209 F. Supp. 286 (D. Minn. 1962). The trial of the instant case primarily involved the testimony of Richard Merritt, one of the two parties responsible for the formation of petitioners. He testified in great length and detail as to the circumstances leading up to and the ultimate reasons for the formation of petitioners. Merritt was subjected to extensive cross-examination by respondent, but his testimony remained unshaken. On the whole, we found him to be a very forthright, candid, and convincing witness. His testimony, in conjunction with other corroborating evidence of record, led us to our ultimate finding of fact that the principal purpose of the formation of petitioners was not that which was prohibited under section 269, but instead was within the realm of prudent business judgment. From the record before us, which we need not recount in detail, we have concluded that the substantial change in the partnership’s dredging business, from the “quiet waters,” or “millpond work,” to the more hazardous open-harbor dredging, gave rise to a genuine and reasonable concern on the Merritts’ part over protection against liability, such concern resulting in the separate incorporation, 1 or 2 years later, of petitioners Dredge Clinton, Inc., and Dredge Cherokee, Inc. As a prerequisite to the sale of Harry’s partnership interest to them, Richard and Duane had to agree to the separate incorporation of each of the dredges. This demand on Harry’s part was obviously a contributing factor to the separate incorporation of petitioners Dredge Clinton, Inc., and Dredge Cherokee, Inc. Upon the subsequent contemplated acquisition of a portable dredge, to be operated on inland sites independently of Merritt Dredging Co., the concern on Richard’s and Duane’s parts regarding limitation of liability once again arose, thus resulting in the formation of Southern Dredging Corp. Richard and Duane were also concerned with the potential harm to the established reputation of Merritt Dredging Co. by virtue of a costly accident involving the portable dredge, the operation of which and the problems arising therefrom being unknown and unfamiliar. While it may be that some of the reasons for forming the new corporation were not well founded — in that the portable dredge was not ultimately operated independently of Merritt Dredging Co. nor used primarily for inland jobs — this does not nullify the existence of these reasons which were bona fide and in the minds of Richard and Duane when they made their decisions to form Southern Dredging Corp. Sno-Frost, Inc., 31 T.C. 1058, 1063 (1959). Our acceptance of limitation of liability as a valid reason for separate incorporation is by no means a novel holding. Many courts dealing with this issue under section 269 have similarly sustained the taxpayer’s argument that a principal reason for the formation of several corporations was the insulation of one’s assets from the liabilities of another. Alcorn Wholesale Co., 16 T.C. 75 (1951); Turner-Moore No. 22 v. United States, an unreported case (W.D. Tex. 1960, 6 A.F.T.R. 2d 5561, 60-2 U.S.T.C. par. 9675); Tidewater Hulls, Inc. v. United States, an unreported case (E.D. La. 1968, 21 A.F.T.R. 2d 1444, 68-1 U.S.T.C. par. 9405).[3] The Tidewater Hulls case also involved the separate incorporation of individual sea vessels. The vessels involved in Tidewater were primarily specialized vessels used for servicing offshore oil-drilling rigs and platforms. While a dredge and the above-described vessel are not exactly of a comparable nature, the multimillion dollar hazards that they are exposed to put their owners under the same pressures with regard to the problem of limiting liability. The court in Tidewater commented on this problem in its allowance of the surtax exemptions arising out of the separate incorporations there involved; these comments are equally applicable to the situation at hand: The erosion of traditional admiralty concepts over the past 30 years has prevented the admiralty doctrine of limitation of liability from being of any meaningful source of safety for plaintiffs. Likewise, the changing and fluctuating insurance market and the possibility of failure or lack of coverage prevents insurance from providing adequate coverage. On brief, respondent cites Bay Sound Transportation Co. v. United States, an unreported case (S.D. Tex. 1967, 20 A.F.T.R. 2d 5418, 67-2 U.S.T.C., par. 9641), reversed and remanded in part (subsequent to the filing of briefs) 410 F. 2d 505 (C.A. 5, 1969), as closely paralleling the situation at hand. Bay Sound also involved the separate incorporation of various vessels, but was decided under section 1551(a),[4] which, in its application,[5] involves an inquiry into the major purpose of incorporation, in contrast to the principal purpose inquiry of section 269(a). Even if we were to ignore the difference in burdens of proof imposed on taxpayers in section 269 and 1551 cases, and agree that there is some similarity between the factual settings of Bay Sound and our case, we still, nevertheless, come to the conclusion that Bay Soimd is of no great import to the resolution of the issues before us. There is nothing from our reading of Bay Sound which in any way indicates that the court there was denying that limiting liability was a valid business purpose for the formation of a corporation. The taxpayers in Bay Sound simply failed, in their testimony and other evidence presented, to carry their burden of proof; such is not the situation in the case before us. [Respondent contends quite ardently that an examination of the record as a whole points quite clearly to the nonbusiness, tax avoidance motives of Richard and Duane Merritt. We have carefully considered this argument as well as all of the other contentions made by respondent. However, we must reject them and, on the entire record before us, have concluded that legitimate and prudent business decisions dictated the formation of separate corporations. Tax evasion or avoidance was not a principal purpose for the organization of petitioner corporations. Respondent looks askance upon the facts that petitioners and Merritt Dredging Co. share the same officers, address, office space, post office box, telephone number, and have all the bookkeeping performed by employees of Merritt Dredging Co. These facts, respondent contends, point to the superficiality of having four separate corporations. These facts, however, do not detract from the validity of having separate corporations for the realistic purpose of limiting liability. The court in Tidewater Hulls, Inc. v. United States, supra, rejected an identical contention as having no relevance to the determination of the “principal purpose” of the formation of each corporation. Respondent also points to the knowledge that Richard and Duane probably had concerning the tax benefits of multiple surtax exemptions. This knowledge, respondent surmises, was attained either through Richard’s and Duane’s business experience or via their consultation with various attorneys, some of whom possessed expertise in the tax field. Even if we were to accept respondent’s conjectures concerning Richard’s and Duane’s knowledge of the tax benefits of multiple surtax exemptions, which are unsupported by the record, we would still not be disposed to bold, upon the evidence before us, that the availing of such tax benefits was the principal purpose for the formation of petitioners. The knowledge of these tax benefits, even if established, is not such a substantial factor, by itself, to justify invoking the provisions of section 269. Alcorn Wholesale Co., supra; Berland's Inc. of South Bend, 16 T.C. 182 (1951). Accordingly, we hold that petitioners were not formed for the principal purpose of evasion or avoidance of Federal income tax, within the purview of section 269, by securing the benefit of the surtax exemption. To reflect the above holding and various concessions made by both parties, Decisions will loe entered wader Bule 50. Also see Young Auto Parts, T.C. Memo. 1968-160; Esrenco Truck Co., T.C. Memo. 1963-72. SEC. 1551. DISALLOWANCE OF SURTAX EXEMPTION AND ACCUMULATED EARNINGS CREDIT. (a) In General — If— (1) any corporation transfers, on or after January 1, 1951, and on or before June 12, 1963, all or part of Its property (other than money) to a transferee corporation, (2) any corporation transfers, directly or indirectly, after June 12, 1963, all or part of its property (other than money) to a transferee corporation, or (3) five or fewer individuals who are in control of a corporation transfer, directly or indirectly, after June 12, 1963, property (other than money) to a transferee corporation, and the transferee corporation was created for the purpose of acquiring such property or was not actively engaged in business at the time of such acquisition, and if after such transfer the transferor or transferors are in control of such transferee corporation during any part of the taxable year of such transferee corporation, then for such taxable year of such transferee corporation the Secretary or his delegate may (except as may be otherwise determined under subsection (d)) disallow the surtax exemption (as defined in section 11(d)), or the $100,000 accumulated earnings credit provided in paragraph (2) or (3) of section 535(e), unless such transferee corporation shall establish by the clear preponderance of the evidence that the securing of such exemption or credit was not a major purpose of such transfer. Finding sec. 1551(a) inapplicable to the various incorporations there involved, for the lack of evidence of any transfers of property by any corporation to the newly created corporations, the Circuit Court of Appeals reversed the District Court on this issue and remanded for a determination under sec. 269. 410 E. 2d 505 (C.A. 5, 1969).