**TRINITY QUARRIES, INC., a corporation, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**G. & W. ASPHALT CO., INC., a corporation, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 81–7676.

United States Court of Appeals, Eleventh Circuit.

June 21, 1982.

Rehearing and Rehearing En Banc Denied Aug. 17, 1982.

John Gilmer Blackburn, Gay Blackburn Maloney, Decatur, Ala., for plaintiff-appellant.

Melvin E. Clark, Jr., Atty., Dept. of Justice, John F. Murray, Acting Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Sect., Glenn L. Archer, Jr., Gary R. Allen, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before VANCE, JOHNSON and HENDERSON, Circuit Judges.

PER CURIAM:

Affirmed on the basis of the district court's Findings of Fact and Conclusions of Law dated May 27, 1981, a copy of which is appended.

AFFIRMED.

APPENDIX

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA, NORTHEASTERN DIVISION

| | |
|---|---|
| TRINITY QUARRIES, INC., a corporation, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | CIVIL ACTION <br><br> CV 80–L–5219–NE |
| G. W. ASPHALT CO., INC., a corporation, <br><br> Plaintiff, <br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | CIVIL ACTION <br><br> CV 80–L–5220–NE |

FINDINGS OF FACT AND CONCLUSIONS OF LAW

FINDINGS OF FACT

1. These two actions, which were consolidated for trial under the Pre-Trial Orders entered February 26, 1981, came on to be heard on April 28, 1981. One action was instituted by plaintiff G & W Asphalt Company, Inc., for the refund of income taxes paid by it for its fiscal year ended April 30, 1976, in the amount of $8,629.00, and for the fiscal year ended April 30, 1977, in the amount of $18,365.00, plus assessed interest paid thereon, together with statutory interest as provided by law. The other action

was instituted by plaintiff Trinity Quarries, Inc., for the refund of income taxes paid by it for its fiscal year ended May 31, 1976, in the amount of $62,850.00, and for the fiscal year ended May 31, 1977, in the amount of $135,891.00, plus assessed interest paid thereon, together with statutory interest as provided by law.

2. The sole question presented was whether payments of purported salary and bonus made by each of the plaintiff corporations to their three principal officers and shareholders, as well as purported salary and bonus paid by each of the plaintiff corporations to the Chairman of its Board of Directors, all of which were claimed as a deduction for compensation, represented a reasonable allowance for salaries or other compensation made only for personal services actually rendered. At the conclusion of the evidence on April 28, 1981, the Court dictated to the reporter certain ultimate findings of fact and its conclusion that the bonuses paid to the officers of each corporation were thinly disguised dividends. At the request of the Court, counsel for defendant submitted and served upon counsel for plaintiffs proposed Findings of Fact and Conclusions of Law. The Court has carefully considered the comments and suggestions of counsel for plaintiffs and proceeds to enter further Findings of Fact and Conclusions of Law.

3. Plaintiff G & W Asphalt Company, Inc. (hereinafter referred to as G & W) is intimately related to plaintiff Trinity Quarries, Inc. (hereinafter Trinity). Both corporations are owned by the same three shareholders in identical proportions, as set out in the table below; these three shareholders are also the executive officers of each of the corporations, as shown below:

### G & W

| Name | Title | Percentage Ownership Interest |
|---|---|---|
| R. V. Greenwell | President | 40% |
| R. L. Waters | Vice President | 40% |
| W. J. Crowe | Secretary Treasurer | 20% |

### TRINITY

| Name | Title | Percentage Ownership Interest |
|---|---|---|
| R. L. Waters | President | 40% |
| R. V. Greenwell | Vice President | 40% |
| W. J. Crowe | Secretary Treasurer | 20% |

4. During the years in question Trinity and G & W both belonged to a group consisting of themselves and four other related corporations. The other four corporations were Material Haulers, Inc., Waters Quarry, Inc., Trinity Stone Company, Inc., and E"Town Paving Company, Inc. Material Haulers and Trinity Stone were located in Decatur, Alabama, along with Trinity and G & W, while the other two corporations were based in Elizabethtown, Kentucky.

5. The Decatur-based corporations are intimately involved in related businesses. Trinity Quarries operates four limestone quarries, all close to Decatur, with two primary sites. The limestone is crushed and processed at each primary site and sold to the general public or used in the manufacture of asphalt at asphalt plants located adjacent to each quarry, under the control of G & W. G & W both sells this asphalt to the general public and uses it to do construction work such as street repairs. Material Haulers, Inc., has a fleet of trucks located at one of the quarry sites, and "ninety-nine percent" of that company's business consists of hauling asphalt, limestone, and other materials to and from the quarry sites. R. L. Waters, President of Trinity, supervises and manages the combined operations at one of the quarry sites, while Rhea Greenwell, his cousin, performs

highly similar management activities for the combined operations at the other quarry site.

6. R. L. Waters and Mr. Greenwell carry out identical duties for each plaintiff. W. J. Crowe, Secretary-Treasurer of both plaintiffs, is not responsible for either of the quarries as such, but he too in general carries out the same duties as Waters and Greenwell. Essentially, all three shareholders collectively manage every phase of the combined operations of the Alabama companies.

7. H. L. Waters is the father of R. L. Waters. He owns no stock in either plaintiff but was the sole shareholder of Trinity Stone, Inc., the predecessor to Trinity Quarries, Inc. He lives in Kentucky but is available to the Alabama corporations for consultation and advice.

8. R. L. Waters and W. J. Crowe are also shareholders and officers in some of the Kentucky-based corporations and received salaries from those corporations during the years in question.

9. R. L. Waters, Rhea Greenwell, W. J. Crowe, and H. L. Waters comprise the Board of Directors of both plaintiffs, and the Board of Material Haulers as well. Crowe and R. L. Waters are also members of the Board of Directors of the closely related Kentucky corporations.

10. The Board for each corporation determines the bonus to be paid to each officer, as a meeting held near the end of the fiscal year. All four board members admitted that, while each was paid a weekly salary, these bonuses were based on the profits of the company for the preceding eleven months.

11. No records were kept of the time expended by each director on behalf of either plaintiff or any of the other related corporations, and all Board members admitted that they could not determine how much time they spent or what services they rendered on behalf of either plaintiff.

12. The ratio between salaries paid by each plaintiff was very similar to the ratio of stock held by the three officers, as shown in the table below:

### Trinity - Officers Salaries

|  | 1976 | Percent of Total | 1977 | Percent of Total |
|---|---|---|---|---|
| Greenwell | 107,700 | 29% | 159,590 | 29% |
| Waters | 117,100 | 32% | 170,750 | 31% |
| Crowe | 63,500 | 17% | 99,290 | 18% |
| H. L. Waters | 81,300 | 22% | 118,900 | 22% |
|  | 369,600 | 100% | 548,530 | 100% |

### G & W - Officers Salaries

|  | 1976 | Percent of Total | 1977 | Percent of Total |
|---|---|---|---|---|
| Greenwell | 22,400 | 44% | 48,400 | 47% |
| Waters | 13,000 | 26% | 28,000 | 27% |
| Crowe | 7,675 | 15% | 12,800 | 13% |
| H. L. Waters | 7,675 | 15% | 12,800 | 13% |
|  | 50,750 | 100% | 102,000 | 100% |

### Combined Salaries

|  | 1976 | Percent of Total | 1977 | Percent of Total |
|---|---|---|---|---|
| Greenwell | 130,100 | 31% | 207,990 | 32% |
| Waters | 130,100 | 31% | 198,750 | 31% |
| Crowe | 71,175 | 17% | 112,090 | 17% |
| H. L. Waters | 88,975 | 21% | 131,700 | 20% |
|  | 420,350 | 100% | 650,530 | 100% |

13. Upon audit, a delegate of the Commissioner of Internal Revenue determined that the salaries paid by both plaintiffs to the three officers, as well as to H. L. Waters (father of R. L. Waters and member of the Board of each plaintiff) were unrea-

sonable, and disallowed as unreasonable the portion of the deductions taken by each plaintiff in the amount of those purported salaries as set forth in the table below:

### Trinity - Fiscal year ending May 31, 1976

|  | Claimed | Allowed | Disallowed |
| --- | --- | --- | --- |
| R. L. Waters | $117,100 | $75,615 | $41,485 |
| R. V. Greenwell | 107,700 | 69,545 | 38,155 |
| W. J. Crowe | 63,500 | 41,005 | 22,495 |
| H. L. Waters | 81,300 | 52,498 | 28,802 |

### G & W - Fiscal year ending April 30, 1976

|  | Claimed | Allowed | Disallowed |
| --- | --- | --- | --- |
| R. L. Waters | $ 13,000 | $ 8,395 | $ 4,705 |
| R. V. Greenwell | 22,400 | 14,466 | 7,934 |
| W. J. Crowe | 7,675 | 4,956 | 2,719 |
| H. L. Waters | 7,675 | 4,956 | 2,719 |

### Trinity - Fiscal year ending May 31, 1977

|  | Claimed | Allowed | Disallowed |
| --- | --- | --- | --- |
| R. L. Waters | $170,750 | $77,830 | $92,920 |
| R. V. Greenwell | 159,590 | 72,743 | 86,847 |
| W. J. Crowe | 99,290 | 45,258 | 54,032 |
| H. L. Waters | 118,900 | 54,196 | 64,704 |

### G & W - Fiscal year ending April 30, 1977

|  | Claimed | Allowed | Disallowed |
| --- | --- | --- | --- |
| R. L. Waters | $ 28,000 | $12,763 | $15,237 |
| R. V. Greenwell | 48,400 | 22,061 | 26,339 |
| W. J. Crowe | 12,800 | 5,835 | 6,965 |
| H. L. Waters | 12,800 | 5,835 | 6,965 |

14. Deficiencies were assessed against plaintiffs based upon those determinations, for their respective fiscal years 1976 and 1977, in the amounts referred to in Finding of Fact 1, above. Plaintiffs paid those deficiencies, and filed timely claims for refund. Thereafter, those consolidated tax refund suits were properly instituted.

15. No business operations comparable to those of the taxpayers existed in their geographic area.

16. Given the lack of records referred to in Finding of Fact 11 above, and the overlap and interrelationship between all six corporations, the Internal Revenue Service determined that the only practical method of determining a reasonable amount of compensation to be paid to each director would be to aggregate the salaries paid by all six corporations.

17. To determine what comparable enterprises would pay to employees with comparable duties, an authoritative accounting compendium, *Executive Compensation*, authored by Mruk and Giardina of Arthur Young and Company, was consulted. This publication is essentially a compilation of salaries paid by over 1,200 companies responding to questionnaires involving a total of more than 6,000 executives. Data is provided on the basis of specific industry classifications by regions, which is further broken down to show salaries paid by bonus versus non-bonus paying companies. Salaries are further categorized by sales volume. Data is provided for the Top Management Group, the Senior Financial Management Group, and the Middle Management Group. The Top Management Group is further subdivided into positions of Chief Executive Officer, Top Financial Officer, Controller, and Treasurer.

18. The average total compensation paid to the top management group in the Basic Materials Industry in 1976, as shown in *Executive Compensation*, for bonus paying companies with sales volume under $25,000,000, was $200,800 in the aggregate. Consideration was given to the fact that the plaintiffs' officers worked extremely long hours, had great experience and expertise, and performed many duties that normally would be carried out by subordinate management personnel. To compensate for these factors the aggregate executive management pay was actually doubled, and the resulting figure of $401,600.00 was treated as reasonable compensation for the management group as a whole. The salaries paid by two corporations, Material Haulers and Waters Quarry, were allowed since they were small and reasonable on their face. These salaries were deducted from the total figure of $401,600, and the resulting sum was then simply allocated on the same percentage as the taxpayers themselves had allocated the total salaries claimed. For the year 1977, an increase was projected at the same rate as 1976 salaries had increased over 1975, and this factor was applied to the 1976 salaries, to account for inflation and increased sales.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of these actions under 28 U.S.C. Section 1346(a)(1).

2. Under Section 162(a)(1) of the Internal Revenue Code of 1954, a deduction is allowable to a corporation for all of the ordinary and necessary business expenses incurred during the taxable year, including "a reasonable allowance for salaries or other compensation for personal services actually rendered."

3. To determine whether payments are deductible under this section, the Court must answer three questions: (1) is the payment in fact compensation, or is it something else; (2) have personal services actually been rendered by the payee; (3) is the payment reasonable or unreasonable when measured by the amount and quality of the services performed with relation to the business of the taxpayer-employer? Mertens, *Law of Federal Income Taxation*, Vol. IV–A, Sec. 25.61. In this case only the first and third questions must be answered as there is no question that each of the payees performed at least some duties for each corporation.

4. The Commissioner's determination of reasonableness carries a presumption of correctness; the burden is on the taxpayer to show that it is entitled to a deduction larger than that allowed by the Commissioner. *Botany Worsted Mills v. United States*, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379 (1929); *C. A. White Trucking Company, Inc. v. Commissioner*, 601 F.2d 867, 869 (5th Cir. 1979); *Miller Box, Inc. v. United States*, 488 F.2d 695, 700 (5th Cir. 1974).

5. While compensation for personal services is a deductible expense, distributions of corporate earnings and profits constitute dividends and are not deductible. Therefore a corporation, particularly a closely held corporation, will often characterize payments which are actually distributions of profits as compensation to officer-shareholders. See Treas.Reg. Sec. 1.162–7(b)(1). Thus close scrutiny must be given to the compensation paid to determine if it is in reality a distribution of dividends. *See* Mertens, *supra*, Sec. 25.81, and the multiplicity of cases cited therein; *Logan Lumber Company v. Commissioner*, 365 F.2d 846, 851 (5th Cir. 1966); *Pepsi-Cola Bottling Company v. Commissioner*, 528 F.2d 176, 179 (10th Cir. 1976).

6. This is especially true when, as here, the corporations have never paid dividends, *McCandless Tire Service v. United States*, 422 F.2d 1336 (Ct.Cl.1970), *Petro-Chem Marketing Company, Inc. v. United States*, 602 F.2d 959 (Ct.Cl.1979), *Kummer Realty Company, Inc. v. Commissioner*, 511 F.2d 313, 315 (8th Cir. 1973), Rev.Rule 79–8, 1979–2 IRB 6, particularly when, as here, the ratio of purported total compensation paid by the taxpayer is in very close proximity to the ratio of stock held by each shareholder. See Treas.Reg. Sec. 1.162–7(b)(1); *Mertens, supra*, Sec. 25.81 at 388.

7. Another factor which casts doubt on whether payments represent true compensation rather than dividends is the employment of family members; here, of course, the plaintiffs are closely held and three of the four directors are relatives. Thus, the extremely high salary paid to H. L. Waters (father of R. L. Waters) must be subject to close scrutiny, especially since he cannot possibly perform full time services for either plaintiff, and since he holds no management position in either plaintiff. *Miller Box*, supra at 702.

8. Another factor which casts doubt on whether such payments are actually compensation is the presence of contingent compensation, especially when determined at the end of the taxable year. *Gem Jewelry Company v. Commissioner*, 6 T.C.M. 11 (1947), aff'd, 465 [165] F.2d 991 (5th Cir. 1948).

9. Based on the above factors, the Court concludes that a portion of the compensation in question in actuality consisted of disguised dividend distributions to the shareholders and distribution of profits to Mr. H. L. Waters.

10. The Court also concludes that the method used by the Internal Revenue Service to determine the amount of purported compensation which was attributable to actual services rendered was reasonable. The burden of proof is on the taxpayers to show otherwise. Since they failed to meet that burden, the Service was justified in aggregating the salaries paid by the related corporations in order to determine a reasonable basis for comparison with regional salary data of comparable companies. *Cf. Fine Realty, Inc. v. United States*, 209 F.Supp. 286 (Minn.1962). Indeed, the mere fact that plaintiffs failed to show the actual extent and value of services rendered by their officers would be sufficient to preclude them from recovering the tax refunds they seek. See *Miller Box, supra* at 702.

11. The allowable deductions to which plaintiffs were entitled for the two years in suit, as reasonable allowances for salaries and other compensation paid for personal services actually rendered by the four persons involved, were properly reduced by the Internal Revenue Service to the amounts set forth in Finding of Fact 13, above.

12. Any conclusion of law deemed as or properly constituting a finding of fact is hereby adopted as a finding of fact. Any finding of fact deemed as or properly constituting a conclusion of law is hereby adopted as a conclusion of law.

13. Judgment will be entered in accordance with these Findings of Fact and Conclusions of Law, dismissing plaintiffs' complaints with prejudice.

Dated this 27th day of May, 1981.

/s/ Seybourn H. Lynne
UNITED STATES
DISTRICT JUDGE

VANCE, Circuit Judge, concurring in part and dissenting in part:

While I agree that the district court properly determined that the comparative salary method was a proper test of deductibility in this case, I believe that the test was improperly applied to the facts of the case. I therefore dissent in part.

Initially, I agree that taxpayers' contention that the salaries paid were part of a valid bonus incentive plan is without merit. "For the sole owner to pay himself a bonus as an incentive to do his best in managing his own business is nonsense." *University Chevrolet Co. v. Commissioner*, 16 T.C. 1452 (1951), aff'd, 199 F.2d 629 (5th Cir. 1952). Accordingly, I think that the decision of the Internal Revenue Service (IRS) to apply a comparative salary method in this case was correct. See 4A J. Mertens, The Law of Federal Income Taxation § 25.64 (1979 rev.). I also believe that the IRS established that $401,600 was a reasonable salary figure to apply in this case and that any section 162 deduction over this amount by the relevant taxpayer should be disallowed. Finally, I agree with the district court's conclusion that the two taxpayers in this appeal cannot be treated as separate corporate entities for the purpose of section 162. See *Miller Box, Inc. v. United States*, 488 F.2d 695, 702–03 (5th Cir.), cert. denied, 417 U.S. 945, 94 S.Ct. 3069, 41 L.Ed.2d 665 (1974).

Notwithstanding these conclusions, I cannot concur in the district court's decision to aggregate the allowable salary deductions for the four Alabama corporations and two Kentucky corporations. While it may be reasonable to disregard the corporate shells of the Alabama corporations, where there is an identity of ownership, I see no reason whatever to accord the same treatment to the two Kentucky corporations. The Kentucky corporations are owned in substantial measure by persons completely unrelated to the Alabama corporations, and at least one of the owners of the Alabama group has no ownership interest at all in the Kentucky group. Additionally, the daily operations of the Kentucky corporations are not connected in any way with the Alabama corporations which, admittedly, are jointly run. Unlike the case of the unified Alabama corporations, where the salary arrangement and dividend history justifies the inference of disguised dividend payments, the nonidentity of ownership interests between the Alabama corporations and the Kentucky corporations ensures that the Kentucky corporations have entered into arms length bargaining with the executives in question, thus keeping their salary payments tied to economic reality.

The only possible reason for ignoring the disunity of interests between the Kentucky and Alabama corporations is an unwarranted concern for the amount of money the individual officers received as compensation for services rendered. But such a concern is completely irrelevant for purposes of determining a reasonable salary deduction for the corporations involved. *Cf. Patterson v. McWane Cast Iron Pipe Co.*, 331 F.2d 921, 923 (5th Cir. 1964) (evidence of compensation paid by subsidiary is irrelevant to reasonableness of parent company's salary deduction). The focus of inquiry in a section 162 salary case should be on the reasonableness of the corporate deductions, not the amount an individual earns by dint of his own efforts. The net result of the district court's application of the comparative salary method to this case is to turn that method on its head. To the extent that it includes consideration of the salary payments by the Kentucky corporations I would reverse the decision of the district court and remand for a recalculation of excess salary deductions.