C. A. WHITE TRUCKING CO., INC. and A. F. Crane and Mary L. Crane, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 77-2498.

United States Court of Appeals, Fifth Circuit.

Aug. 30, 1979.
Rehearings Denied Oct. 1, 1979.

M. Clifton Maxwell, Fort Worth, Tex., for petitioners-appellants.

Robert A. Bernstein, R. Bruce Johnson, Attys., Tax Div., Dept. of Justice, Washington, D. C., Gilbert E. Andrews, Act. Chief, App. Section, M. Carr Ferguson, Asst. Atty. Gen., U. S. Dept. of Justice, Washington, D. C., for respondent-appellee.

Before WISDOM, CLARK and GEE, Circuit Judges.

CHARLES CLARK, Circuit Judge:

In 1962, Frank and Mary Crane acquired 54.5 percent of the outstanding stock of the C. A. White Trucking Co., Inc. In addition to holding the office of President of White Trucking, Frank Crane performed the duties of general manager, salesman and traffic manager for the company. His wife, Mary Crane, also worked diligently to make the business a success. In 1970, Mrs. Crane worked approximately 50 hours per week in discharging her duties, which included taking telephone orders, requesting services, posting accounts receivable and payable to the books, acting as dispatcher, running the business when her husband was out of town, preparing the payroll, and preparing reports to various state and federal agencies concerning White Trucking Company's operations. Due to the Cranes' efforts, White Trucking became a successful enterprise. When they first acquired the company in 1963, it reported $188,762 in gross revenues. By 1970, that figure had risen to $786,602.

Until 1970 the Cranes' compensation from the company steadily increased as the company prospered. In 1966, the company paid Mr. Crane a salary of $18,466, while Mrs. Crane received $6,850. By 1968, the company had increased Mr. Crane's salary to $35,600 and was paying Mrs. Crane $14,100 per year. During most of 1970, the company paid Mr. Crane $225 per week, but in mid-November his salary was increased to $250 per week. On approximately December 31, 1970, Mr. and Mrs. Crane decided that the company should pay Mr. Crane a large bonus, amounting to $65,000, because of the unusually high earnings for that year. Thus, in 1970, White Trucking paid Mr. Crane a total of $76,850. In reaching the decision to pay Mr. Crane this salary, the Cranes allocated specific amounts of compensation for the various functions Mr. Crane performed, as follows: President and general manager, $40,000; sales manager, $20,000; traffic manager, $16,850. Despite the company's substantial earnings and despite her agreement to take over the duties of the company's bookkeeper, who left the company at the end of 1969, Mrs. Crane was paid only $4,000 in 1970, substantially less than she had received in previous years.

In its 1970 federal corporate income tax return, White Trucking deducted the $76,850 it paid to Crane from its gross income under the provisions of § 162(a)(1) of the Internal Revenue Code, which allows the deduction of "a reasonable allowance for salaries." Determining that $48,000 was reasonable compensation for the services Crane had performed, the Commissioner of Internal Revenue disallowed $28,850 of this deduction and sent the company a notice of deficiency stating that it owed an additional $14,194.19 in income tax. On the petition of the company, the Tax Court held that $62,000 was reasonable compensation for Mr. Crane's services and reduced the deficiency to $7,306.20. On the company's appeal to this court, we affirm the Tax Court's decision.

The company urges that the compensation that Mr. Crane received was reasonable, presenting two arguments. First, asserting that the Cranes should be viewed as a single entity for the purposes of examining the validity of the deduction, the company urges that the total salary received by both the Cranes was a reasonable compen-

sation for the services they performed. Second, the company argues that, in paying Mr. Crane a substantial bonus in 1970, it intended to compensate Mr. Crane for past services. The Commissioner contends that since the Cranes decided to pay Mr. Crane the large bonus and specifically allocated the amounts paid to particular functions performed solely by Mr. Crane, the reasonableness of his salary must be assessed in terms of the services he performed. The Commissioner also asserts that the company clearly did not intend the bonus to compensate Mr. Crane for past services.

 Since the deductions allowed by the Internal Revenue Code are matters of legislative grace, *Commissioner v. National Alfalfa Dehydrating & Milling Co.,* 417 U.S. 134, 149, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717, 727 (1974); *Commissioner v. Tellier,* 383 U.S. 687, 693, 86 S.Ct. 1118, 1121, 16 L.Ed.2d 185, 190 (1966); *Cagle v. Commissioner,* 539 F.2d 409, 416 (5th Cir. 1976); *Alfred I. DuPont Testamentary Trust v. Commissioner,* 514 F.2d 917, 922 (5th Cir. 1975), the taxpayer must bear the burden of showing his or her entitlement to a particular deduction, *Cagle, supra,* 539 F.2d at 416. Moreover, the decision whether a deduction is permissible is strictly controlled by the provisions of the code; equity cannot supply a deduction when the code does not grant one. *Commissioner v. Kowalski,* 434 U.S. 77, 96, 98 S.Ct. 315, 326, 54 L.Ed.2d 252, 267 (1977); *National Alfalfa, supra,* 417 U.S. at 149–150, 94 S.Ct. at 2129, 40 L.Ed.2d at 727–728.

The company asserts that even if the salary paid to Mr. Crane was excessive in light of the services that he performed, the company was still entitled to deduct the entire amount received by him. Noting that under Texas law salary income received during marriage is community property and that Mr. and Mrs. Crane worked as a team, the company urges that the compensation Mr. Crane received should be treated as compensation for the efforts of the team. Thus, according to the company's theory, the portion of Mr. Crane's salary which the Tax Court found to be excessive should be allocated to Mrs. Crane, who was substantially underpaid.

The company relies on *Lewisville Investment Co. v. Commissioner,* 56 T.C. 770 (1971), as support for its allocation theory. In *Lewisville,* some joint venturers had agreed to compensate members of two different families for services they had rendered to the joint venture. The agreement provided that each family was to be compensated as a unit. Each of the family units had in turn agreed that each family member within a unit would share the unit compensation equally. When the Internal Revenue Service challenged the deduction of the compensation paid to some of the individual family members, the Tax Court held that since the agreement called for each of the families to be compensated as a unit, the validity of the joint venture's salary deduction depended upon the reasonableness of the compensation paid to each unit rather than upon the reasonableness of compensation paid to each member within the units.

*Lewisville* is of no help to White Trucking. As the Tax Court noted, *Lewisville* concerned the validity of an agreement to allocate salaries to family units. No such agreement was entered into here. Rather, the record shows that the compensation Mr. Crane received was in payment for services rendered solely by him.

 The crux of the company's arguments is that the method of fixing salaries it adopted should be ignored and a new salary structure substituted in order to better effectuate the company's true aims in paying Mr. Crane the large salary. The Commissioner, however, has no duty to restructure a taxpayer's transactions to achieve optimal tax benefits. "[W]hile a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not, . . . and he may not enjoy the benefit of some other route he might have chosen to follow but did not." *National Alfalfa, supra,* 417 U.S. at 149, 94 S.Ct. at 2137, 40 L.Ed.2d at 727. Thus, having chosen to pay Mr. Crane

the excessive salary, the company cannot now escape the tax consequences of its choice.

■ The company contends that the salary was intended to compensate Mr. Crane for services rendered in prior years. The Tax Court held that the salary was intended to pay for Mr. Crane's services during the 1970 fiscal year. We have examined the record in this case and hold that this finding is not clearly erroneous.

AFFIRMED.