**Luther R. PATTON,**
**Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 85–4822
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 5, 1986.

Albert Sidney Johnston, Jr., Biloxi, Miss., for petitioner-appellant.

Fred T. Goldberg, Jr., Chief Counsel, I.R.S., Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div., U.S. Dept. of Justice, Michael L. Paup, Chief, Appellate, Charles E. Brookhart, Atty. Sec., Murray S. Horwitz, Atty., Washington, D.C., for respondent-appellee.

Before REAVLEY, JOHNSON, and DA-VIS, Circuit Judges.

JOHNSON, Circuit Judge:

Luther R. Patton seeks review of a tax court judgment upholding tax deficiencies and fraud penalties assessed by the Commissioner of Internal Revenue ("Commissioner"). Finding Patton's contentions on appeal unpersuasive, we affirm the judgment of the tax court.

## I.

In 1967, Luther Patton was elected sheriff of Harrison County, Mississippi. As sheriff, Patton was the county's chief law enforcement officer and tax collector. During the period Patton was in office, a Mississippi sheriff would run his office much like an ordinary business venture. The sheriff received fees for collecting taxes and enforcing laws. These fees came partly from tax collections and partly from a percentage of fines levied for criminal offenses. The sheriff also received a salary as an elected official for his services from the county. However, the sheriff paid his office expenses including personnel costs from the fees he made for collecting taxes and from fines.

As sheriff, Patton was also authorized by Mississippi law to appoint bail bondsmen for Harrison County. After his election in 1967, Patton appointed two political supporters, John Gill and Earl Owen, to serve as bail bondsmen. Gill and Owen operated the bail bonding business in Harrison County as a partnership and were the only two bail bondsmen in Harrison County for the years relevant to the instant case.

In January 1972, a federal grand jury was empaneled in Biloxi, Mississippi, to investigate criminal activities in Harrison County, Mississippi. One subject of the investigation was the practice, common in Harrison County, of using pinball machines for illegal gambling. Several operators of pinball gambling machines were subpoenaed to testify before the grand jury. Much of that testimony focused on bribes paid to Patton to prevent Patton from enforcing state gambling laws.[1]

Subsequent to the initiation of the federal grand jury investigation, the Commissioner audited Patton's 1968, 1969 and 1970 federal income tax returns. After completing its audit and investigation, the Commissioner determined that Patton had received and failed to report the following amounts of income during the relevant years:

| Year | Amount |
|------|--------|
| 1968 | $28,100 |
| 1969 | $22,800 |
| 1970 | $17,000 |

According to the Commissioner, Patton had derived this unreported income from bribes paid by local gamblers as well as kickbacks paid by the two bail bondsmen Patton had appointed.

The Commissioner also disallowed numerous salary deductions Patton had made on his tax returns (as business expenses) pursuant to 26 U.S.C. § 162(a)(1). In particular, the Commissioner disallowed the following claimed salary deductions:

---

1. As a result of the grand jury investigation, Patton was indicted for willfully filing false income tax returns under 26 U.S.C. § 7206(1). Patton eventually entered a plea of *nolo conten-* *dere* to some or all of the tax charges against him. Patton's criminal conviction is not at issue in the instant appeal which focuses solely on Patton's civil tax liability.

| | 1968 | | 1969 | | 1970 | |
|---|---|---|---|---|---|---|
| | Claimed | Disallowed | Claimed | Disallowed | Claimed | Disallowed |
| L.S. Broadus | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000.00 |
| Maxie Broadus | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | —0— |
| R. Hart Chinn | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800.00 |
| Ed Owen | 3,600 | 3,600 | 3,600 | 3,600 | 1,500 | 1,500.00 |
| G.L. Pemberton | 6,000 | 3,000 | 6,000 | 3,000 | 6,000 | 3,000.00 |
| Ronnie Patton | 3,600 | 1,800 | 3,700 | 1,850 | 2,925 | 1,462.50 |
| Hunter Patton | 3,600 | 1,800 | 3,700 | 1,850 | 3,174 | 1,587.00 |
| Delores Patton | — | — | — | — | 1,600 | 1,600.00 |
| Faye Pattone | — | — | — | — | 2,350 | 2,350.00 |
| J.R. Flynt | — | — | 287 | 287 | — | — |
| TOTAL | | $30,000 | | $30,387 | | $19,299.50 |

According to the Commissioner, several of Patton's payees had been paid for political favors and not for any personal service provided to Patton's "business" as required by section 162(a)(1). The Commissioner also determined that several employees had been paid an excessive and unreasonable amount for those services actually provided.

The Commissioner finally determined that Patton had acted fraudulently in failing to report his full income and in claiming excessive deductions during the relevant years. Based on this fraud determination, the Commissioner imposed penalties pursuant to 26 U.S.C. § 6653(b).

Patton received a statutory notice of deficiency dated October 21, 1977, informing him of the Commissioner's conclusions. The notice informed Patton of the following deficiencies:

| Year | Tax | Penalty |
|---|---|---|
| 1968 | $27,391.17 | $13,695.59 |
| 1969 | $35,158.24 | $17,579.12 |
| 1970 | $20,132.06 | $10,066.13 |

On January 23, 1978, Patton petitioned the tax court for a redetermination of the Commissioner's deficiency findings. The tax court eventually entered a decision on July 9, 1985,[2] reaching in large part the same findings and conclusions as those reached by the Commissioner.[3] Patton filed timely notice of appeal raising several challenges to the findings of the tax court.

## II.

On appeal, Patton first challenges the tax court's finding that a number of payments by Patton between 1968 and 1970 were not deductible under 26 U.S.C. § 162(a)(1). Section 162(a)(1) permits a deduction for all ordinary expenses paid or

**2.** The decision is reported at *Patton v. Commissioner*, 49 T.C.M. (CCH) 1068. The decision is based on evidence adduced during a trial which lasted from November 30, 1981, until December 4, 1981.

**3.** The tax court did determine that Patton was entitled to a $600 yearly deduction for salary paid to R. Hart Chinn. The Commissioner had disallowed the entire salary paid to Chinn. The tax court also determined that Patton was entitled to a $360 yearly deduction for salary paid to Ed Owen. The Commissioner had disallowed

Gwen's entire salary. Finally, the tax court determined that Patton was entitled to deduct $2,000, $2,100, and $1,800, as reasonable compensation for Hunter Patton's services during 1968, 1969 and 1970. The Commissioner had allowed slightly less in deductions for Hunter's salary. At trial, the Commissioner conceded that the salaries paid to Patton's son, Ronnie Patton, and to his daughter-in-law, Faye Patton, were deductible in full as charged by Patton. The tax court rejected other conclusions of the Commissioner not relevant to the instant appeal.

incurred during the taxable year in carrying on any trade or business, including "a reasonable allowance for salaries or other compensation for personal services actually rendered." To determine whether payments are deductible under section 162(a)(1), three questions must be resolved: (1) is the payment in fact compensation for services rendered in connection with taxpayer's business, or is the payment for something else; (2) have personal services actually been rendered by the payee; and (3) is the payment reasonable when measured by the quality and amount of the services performed. *Trinity Quarries, Inc. v. United States,* 679 F.2d 205, 210 (11th Cir.1982); *Elliotts, Inc. v. Commissioner,* 716 F.2d 1241, 1243 (9th Cir.1983); 26 C.F.R. § 1.162–7 (1985) ("The test of deductibility in the case of compensation payments is whether they are reasonable and are in fact payments purely for services."). The finding of the tax court in regard to each of the above factual inquiries is reversible only if clearly erroneous. *See C.A. White Trucking Co., Inc. v. Commissioner,* 601 F.2d 867 (5th Cir.1979).

The tax court found in the instant case that Patton had claimed excessive salary deductions under section 162(a)(1). In particular, the tax court found that amounts paid to Maxie Broadus, L.S. Broadus, Delores Patton and Juanita Flint were not compensation for services performed in connection with Patton's "business." Regarding the payments to Maxie Broadus and L.S. Broadus, the tax court found that the payments were in return for political support and not for services rendered in connection with either the sheriff or tax collector's office. Regarding the payments to Delores Patton and Juanita Flint, the tax court found that neither woman had performed any services in connection with Patton's "business." After carefully reviewing the record, we conclude that the foregoing findings were not clearly erroneous. Although uncontradicted evidence established that both Maxie Broadus and L.S.

Broadus did provide some assistance to Patton's "business," the tax court could properly conclude that the payments were not in exchange for that assistance. In addition, the tax court found that amounts paid to R. Hart Chinn, Ed Owen, G.L. Pemberton and Hunter Patton were excessive. Our review of the record reveals that the tax court's findings regarding excessive and unreasonable compensation were also not clearly erroneous.

■ Patton contends that the Commissioner offered no evidence regarding the reasonableness of that compensation paid for services provided to the sheriff's office. Patton concludes that because the tax court had no evidentiary basis for determining the reasonable value of services provided, the case must be remanded. We disagree. First, we note that the burden was on Patton, not the Commissioner, to establish that Patton was entitled to the claimed section 162(a)(1) deductions. *See C.A. White Trucking Co., Inc. v. Commissioner,* 601 F.2d 867, 869 (5th Cir.1979); *Cagle v. Commissioner,* 539 F.2d 409, 416 (5th Cir.1976); *Trinity Quarries, Inc. v. United States,* 679 F.2d 205, 210 (11th Cir. 1982). Thus, it was Patton who was required to establish the reasonableness of compensation paid.

■ Second, Patton cannot seriously contend that the tax court lacked an evidentiary basis to determine the reasonable value of services provided by Chinn, Owen, Pemberton and Hunter Patton. In each case, the tax court considered evidence regarding (1) the amount of services provided by the employee; (2) the sum paid to full-time employees providing similar services; and (3) each employee's outside activities and obligations. In Pemberton's case, the tax court also considered evidence regarding the sum paid to Pemberton's predecessor. These factors were all relevant to the tax court's inquiry into the reasonableness of compensation paid and provided an adequate basis for its determinations. *See,*

e.g., B.B. Rider Corp. v. Commissioner, 725 F.2d 945, 952 (3d Cir.1984); Kennedy v. Commissioner, 671 F.2d 167, 173 (6th Cir.1982); Builders Center, Inc. v. United States, 571 F.Supp. 83, 88 (M.D.La.1983).

### III.

■ Patton also challenges the tax court's finding that Patton had understated his income for the three years in question. Patton admits that he was required to report any income derived from bribes and kickbacks. Patton argues, however, that the tax court erred in finding as a factual matter that he received such income. We disagree.

The tax court found that Patton received over $65,000 in unreported income in the form of payoffs and kickbacks during the years 1968, 1969 and 1970. The record contains more than ample evidence to support this finding. Several bingo machine operators testified as to the fact and amount of payments made to Patton which were never reported on Patton's tax forms. This direct testimony was supported by circumstantial evidence regarding Patton's failure to enforce gambling laws despite his knowledge of ongoing gambling activity. Testimony also indicated that Patton failed to report kickbacks he received from two bail bondsmen, John Gill and Earl Gwen. Thus, the tax court's finding of unreported income was not clearly erroneous.

### IV.

■ Patton next challenges the tax court's imposition of the fifty percent civil fraud penalty provided by 26 U.S.C. § 6653(b). Section 6653(b) states that "[i]f any part of any underpayment ... of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment." The Commissioner bears the burden of proving fraud, which must be established by clear and convincing evidence. 26 U.S.C. § 7454(a); Marsellus v.

Commissioner, 544 F.2d 883, 885 (5th Cir. 1977); Bryan v. Commissioner, 209 F.2d 822, 825 (5th Cir.1954), cert. denied, 348 U.S. 912, 75 S.Ct. 289, 99 L.Ed. 715 (1955). To carry this burden, the Commissioner must prove that the taxpayer intended to evade taxes by conduct designed to conceal, mislead or otherwise prevent the collection of such taxes. Cefalu v. Commissioner, 276 F.2d 122, 128–29 (5th Cir.1960); Eagle v. Commissioner, 242 F.2d 635, 637 (5th Cir.1957); Korecky v. Commissioner, 781 F.2d 1566, 1568 (11th Cir.1986). Fraud need not be established by direct evidence, but can be shown by surveying the taxpayer's entire course of conduct and drawing reasonable inferences from that conduct. Goldberg v. Commissioner, 239 F.2d 316, 320 (5th Cir.1956). This Court will not reverse a factual finding of fraud by the tax court unless the finding is clearly erroneous. Marsellus v. Commissioner, 544 F.2d at 885; Korecky v. Commissioner, 781 F.2d at 1568.

To sustain its fraud determination in the instant case, the tax court found a number of indicia of fraud. First, Patton consistently failed to report substantial amounts of income over a period of years. This Court has held that such consistent understatement of income with consequent underpayment of taxes is strong evidence of the intent to evade taxes required for a finding of fraud. See Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir.1962); Cefalu v. Commissioner, 276 F.2d 122, 129 (5th Cir.1960); Korecky v. Commissioner, 781 F.2d at 1568. That Patton's unreported income was from illegal activities is additional evidence of his tax evasive motive. Finally, the tax court found that Patton had unsuccessfully attempted to influence the testimony of a government witness in order to cover up one source of Patton's unreported income. Each of the tax court's findings regarding these indicia of fraud were supported by evidence in the record. Given the foregoing "badges of fraud," we cannot say that the tax court

clearly erred in finding fraud within the meaning of section 6653(b).[4]

## V.

■ Before this case was tried, the Commissioner obtained an order under Fed.R. Crim.P. 6(e)(3)(C)(i) from the United States District Court for the Southern District of Mississippi.[5] This order released to the Commissioner transcripts of the grand jury testimony of several witnesses who had testified in connection with the investigation of criminal activity in Harrison County. Patton contends that this testimony was not properly obtained. Relying on *United States v. Baggot*, 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983), Patton contends that the transcripts were not obtained preliminary to or in connection with a judicial proceeding as required by Rule 6(e)(3)(C)(i).

Patton's reliance on *Baggot* is misplaced. In *Baggot*, the Supreme Court observed that Rule 6(e)(3)(C)(i) "contemplates only uses related fairly directly to some identifiable litigation, pending or anticipated," as measured by the "primary purpose of the disclosure." *Baggot* held that disclosure for use in an IRS audit of civil tax liability did not fall within the rule since the agency's determination of tax liability and its collection of any amount determined to be due did not require judicial intervention.

To be distinguished, however, is the situation where upon receiving a notice of deficiency from the IRS, the taxpayer petitions the tax court for a redetermination of the deficiency. Clearly a tax court petition for redetermination is a "judicial proceeding" within the meaning of Rule 6(e)(3)(C)(i). *See Baggot*, 463 U.S. at 484, 103 S.Ct. at

3168. Patton filed his petition challenging the Commissioner's deficiency determination in 1978. The Government's motion seeking the release of grand jury testimony was not filed until three years later, on November 25, 1981. In its motion, the Government stated that this case was pending in the tax court, that the testimony of the grand jury witnesses was "relevant to the tax liabilities of Luther R. Patton" and that it was necessary to have such testimony released in order "(a) to facilitate the recollection of witnesses; (b) to use as past recollection recorded in the event of total loss of recollection of memory by the witness; and (c) for impeachment purposes if a witness were to testify differently now than at the time he was before the grand jury." The Government's purpose was plainly to use the materials sought to defend the pending tax court litigation. Patton's claim that the transcripts were not obtained in connection with a judicial proceeding is thus wholly without merit.

## VI.

For the foregoing reasons, the judgment of the tax court is

AFFIRMED.

---

**4.** The normal period of limitations for the assessment of taxes is three years after the return was filed. 26 U.S.C. § 6501(a). Under 26 U.S.C. § 6501(c)(1), however, when fraud is shown, "the tax may be assessed ... at any time." Thus, the tax court's finding of fraud also prevented operation of the statute of limitations.

**5.** In *United States v. Sells Engineering, Inc.,* 463 U.S. 418, 447, 103 S.Ct. 3133, 3149, 77 L.Ed.2d 743 (1983), the Supreme Court held that "disclosure to government attorneys and their assistants for use in a civil suit is permissible only with a court order under Rule 6(e)(3)(C)(1)...."