In the Matter of Robert H. KIRK and
Mary A. Kirk, Debtors.

Bankruptcy No. 86–1720–8B3.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 21, 1990.

B. Gray Gibbs, for debtors.

Chris C. Larimore, trustee.

Marika Lancaster, U.S. Dept. of Justice.

## ORDER ON OBJECTION TO CLAIM OF INTERNAL REVENUE SERVICE

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS MATTER came on for consideration upon an objection to claim of Internal Revenue Service (IRS)[1] filed by Debtors, Robert H. and Mary A. Kirk. Debtors filed their Chapter 13 bankruptcy petition on April 30, 1986. IRS filed its claim for taxes, interest, and penalties allegedly owed by Debtors for tax years 1981 through 1985. Debtors object specifically to the portion of IRS' claim which represents the following:

1. Civil fraud penalty relating to tax years 1983 and 1984.

2. Interest based on the civil fraud penalty relating to tax years 1983 and 1984.

3. The substantial understatement penalty relating to tax years 1983 and 1984.

4. The negligence penalty relating to tax year 1985.

5. Interest based on the negligence penalty relating to the tax year 1985.

6. Taxes computed on sale of stock using short term capital gain rates rather than long term rates for tax years 1984 and 1985.

As a result of an audit of Debtors' 1983, 1984, and 1985 federal tax returns, IRS filed proofs of claims in Debtors' bankruptcy case for taxes, interest, and penalties owed by Debtors. An Income Tax Examination Changes Report (Report) prepared by Revenue Agent Richard Starr (Agent Starr) is the basis for this portion of the claim. The Report outlines the adjustments made to Debtors' tax returns based on the audit.

## STATEMENT OF THE FACTS

Debtors filed their 1983 federal tax return on February 27, 1985.[2] On their return, Debtors claimed a $25,000.00 deduction for investment interest expense, a business loss of $6,500.00, a disability exclusion of $12,472.00, and an employee business expense of $4,500.00. Debtors failed to report on their return $2,271.00 of dividend income and $376.00 of interest income. IRS disallowed the investment interest expense, business loss, disability exclusion, and added to Debtors' income the dividend and interest income. The total adjustment to Debtors' income resulting from IRS' audit of their 1983 tax return was $51,119.00.

Debtors filed an amended 1984 federal tax return on April 21, 1986 and their original 1984 federal tax return was filed on August 3, 1987.[3] On their original 1984 return, Debtors claimed a $25,000.00 investment interest expense and a $17,509.00 disability exclusion. Debtors failed to report on their return $2,432.00 in dividend income, $360.00 in interest income, and a stock sale transaction which resulted in a gain of $10,320.00. IRS disallowed the in-

---

**1.** IRS has amended its original proof of claim eight times. Debtors' objection is to all proofs of claims filed by the IRS except the amendment filed after the hearings on the objections considered herein.

**2.** None of the Debtors' tax returns for the tax years discussed were timely filed.

**3.** This fact is a minor anomaly considering the entire case.

vestment interest expense and the disability exclusion. In addition, IRS increased Debtors' income by the dividend, interest, and stock gain which Debtors failed to report. The total adjustment in Debtors' income resulting from the IRS audit of their 1984 return was $60,101.00.

According to IRS' records, Debtors never filed a 1985 federal tax return. IRS did receive a 1985 tax return from Debtors after a request was issued by a revenue collection officer. This return was used as the basis for IRS' audit. The audit resulted in an increase in Debtors' income by $17,620.00 of pension income, $297.00 interest income, and $12,337.00 of gain on a stock sale. The total adjustment in Debtors' income as a result of IRS' audit of their 1985 return was $30,254.00.

Agent Starr's report reflects penalties IRS has imposed against Debtors for each of the years 1983, 1984, and 1985. The civil fraud penalty has been imposed against the Debtors for both the 1983 and 1984 tax years pursuant to Section 6653(b)(1) of the Internal Revenue Code (I.R.C.)[4]. The basis for the penalty is the tax returns filed by Debtors were so unrepresentative of their correct tax liability as to indicate fraud. According to Government testimony, Debtors were given numerous opportunities to substantiate items disallowed and to refute additions to their income but failed to do so. IRS has also imposed the substantial underpayment penalty on Debtors 1983 and 1984 tax returns pursuant to I.R.C. § 6661. This penalty is based on Debtors' understatement of their tax liability by more than $5,000.00 for each year.

The negligence penalty has been imposed against Debtors for their 1985 tax return. This penalty is based on Debtors' omission of income and improper exclusion of pension income. Agent Starr testified the negligence penalty was imposed rather than the civil fraud penalty due to the fact Debt-

ors' increase in tax liability was much smaller than the 1983 and 1984 adjustments because of an offsetting adjustment for interest expense deduction to which Debtors were entitled.[5]

The following summary of activities prompted IRS to impose the civil fraud penalty against Debtors for tax years 1983 and 1984. These activities were ongoing throughout the relative time periods and beyond.

During the course of its audit, IRS discovered Debtors were using several social security numbers to conduct various financial transactions. One social security number belonged to Debtors' daughter, Margo Kirk. In deposition, Margo Kirk testified she never authorized nor had knowledge of her parents' use of her social security number to conduct any financial transactions. Another social security number was used by the Debtors to conduct the financial transactions of a Panamanian corporation created by Debtors for the purpose of offshore investments. A third social security number was used to transact stock sales in the name of Mr. Kirk and his deceased mother. A fourth social security number was submitted to a stock brokerage firm to establish a brokerage account. Mr. Kirk represented to the brokerage firm the social security number belonged to his son, James Kirk. No evidence was admitted to establish a son named James Kirk even existed.[6] Debtors used two other completely different social security numbers to file their federal tax returns with IRS. It is IRS' position the use of various social security numbers by Debtors was an attempt to conceal income in order to evade income tax.

Mr. Kirk, a retired commercial airline pilot, received pension payments from the airline. On his 1983, 1984, and 1985 tax returns, Mr. Kirk excluded large portions of his pension as non-taxable disability income. IRS disallowed the exclusions and

---

**4.** All references to the Internal Revenue Code refer to Title 26 U.S.C. in effect for the year in question.

**5.** Debtors were entitled to an interest expense deduction because IRS collected $22,881.00 in

interest from Debtors in 1985 pursuant to a tax levy.

**6.** James Kirk is the name of Mr. Kirk's deceased father.

added the amounts back into Debtors' income. The W–2P form Mr. Kirk received from his former employer reported the entire pension payments as taxable income. In spite of various requests by IRS, Debtors never provided any documentation to establish Mr. Kirk was entitled to a disability exclusion. IRS concludes Debtors' exclusion of fully taxable income represents another attempt to evade income taxes.

In the early 1970's Mr. Kirk established Condor Corporation (Condor), an offshore investment company in Panama. Condor was capitalized with stock held in the names of Debtors, Debtors' daughter, and Mr. Kirk's mother. The names on the stock were never changed to reflect ownership by Condor. Shortly after the formation of Condor, Mr. Kirk was allegedly ousted as an officer by new investors. Thereafter, pursuant to an alleged agreement with Condor's board of directors, Mr. Kirk was to pay $25,000.00 per year for which he would receive stock in Condor. Supposedly, the agreement created some form of option agreement for retirement payments. Mr. Kirk never produced a copy of the alleged agreement even after IRS challenged his deduction for the $25,-000.00 investment interest expense.[7]

Debtors have continued to not report their financial activities even after the filing of their Chapter 13 case. Debtors failed to list two parcels of real property held in the name of Mr. Kirk's deceased parents on their bankruptcy schedules. Debtors sold the stock allegedly used to capitalize Condor and failed to disclose the ownership or the sale of the stock to this Court.

While 1986 and 1987 tax adjustments are not part of the objection before the Court,[8] the Court finds the adjustments and the circumstances leading to the adjustments relevant to the issue of whether Debtors committed fraud. In 1986 Debtors claimed a $14,620.00 pre-payment credit which Debtors had not paid. This credit was a dollar for dollar reduction in Debtors' taxes due for 1986. Debtors were given the opportunity to provide substantiation of the payment but did not do so.

Debtors failed to report stock sales in 1987 which resulted in a gain of $22,325.00. Debtors' explanation regarding the stock sale is incredible. Mr. Kirk testified the names on the stock, which he originally used to capitalize Condor, were never changed to reflect ownership by Condor. When officers of Condor contacted Mr. Kirk (by way of a chance meeting with a courier in a hotel lobby) after years of no communication, they requested that he sell the stock for Condor. Mr. Kirk, knowing of his current problems with IRS and his pending bankruptcy, sold the stock (bearing his and other family members' names but reported under social security numbers other than the ones Debtors used to file their tax returns) then gave the cash proceeds to an awaiting courier for transmission to Condor offices in Panama. Mr. Kirk also testified he had no documentary evidence of these transactions.

## CIVIL FRAUD PENALTY

■ IRS' imposition of the civil fraud penalty is based on Agent Starr's conclusion Debtors' underpayment of taxes for 1983 and 1984 was due to fraud. At trial evidence was presented by the Government to prove Debtors, by various acts, intentionally committed fraud to evade payment of federal income taxes. The Government has the burden of proving Debtors understatement of tax was due to fraud.[9] Debt-

7. The existence of Condor is predicated on the articles of incorporation admitted into evidence. Thereafter, the only establishment of its existence or creation is Mr. Kirk's testimony. In light of the fact Mr. Kirk does not even possess the "agreement" nor other documentation as to dealings with Condor, this Court has great doubt, considering all the testimony, that Condor exists and if it does it is a most clandestine organization.

8. The only objections under consideration are those to the 1983, 1984, and 1985 tax adjustment claims.

9. I.R.C. § 7454(a); *Carter v. Campbell*, 264 F.2d 930, 936 (5th Cir.1959).

ors contend the Government has failed its burden of proving fraud.

■ The standard for proving a taxpayer has committed civil fraud to evade income taxes is clear and convincing evidence.[10] As such, the Court now considers, based on the evidence presented, whether Debtors committed fraud in an effort to avoid paying income taxes on their 1983 and 1984 tax returns.

■ During the course of trial, this Court heard numerous tales of the Debtors' activities including but not limited to using several social security numbers to conduct financial transactions; omitting items of taxable income and deducting unsubstantiated expenses on their tax returns; mischaracterizing income as nontaxable when it was actually taxable income; using names of deceased or nonexisting relatives to transact business; failing to disclose assets in their Chapter 13 bankruptcy schedules; selling stock after claiming they did not own it; seeking refunds of withholding credits when no withholding payments had been made, just to name a few. Debtors submit this Court should wear blinders when considering whether Debtors committed fraud in the tax years 1983 and 1984. They advise the Court caselaw requires the Court to only consider those specific activities which took place in the same year as that of the tax return. Debtors would have this Court not consider any of their actions which took place subsequent to 1985 because to do so might influence this Court's determination of whether fraud was committed by Debtors during the tax years in which the civil fraud penalties were assessed.

It is the Court's duty to consider all evidence before it. Evidence of fraudulent actions occurring both before and after 1983 and 1984 tax years was admitted for the Court's consideration. Caselaw permits the Court to consider the entire circumstances when determining whether Debtors intentionally acted to commit fraud.[11] When considering whether a taxpayer has committed fraud, many courts [12] look to the totality of the taxpayer's activities such as continual under-reporting of income, inadequate or no records, and attempts to conceal assets. While isolated activities by Debtors may or may not indicate fraud, when Debtors activities are taken as a whole, it is clear to this Court that Debtors' actions were purposeful attempts to evade income taxes.

While it is the burden of the Government to prove fraud, Debtors have made little or no effort to show to this Court their tax returns were at least plausible. The Court is aware Debtors were pro se for much of the trial and may not have been knowledgeable of the legal process. The record, however, reflects this Court was more than accommodating to Debtors and on more than one occasion the Court gave Debtors the opportunity to provide documents which Mr. Kirk said he could obtain to support his allegations.[13] During testimony the Court heard explanations of why Debtors did not report certain income on their tax returns and why Debtors deducted certain expenses. The Court does not find Debtors' explanations believable or even plausible.

The Court finds the Government has met its burden of proving the adjustments to Debtors' 1983 and 1984 tax returns were due to fraud.[14] Based on the multitude of evidence presented by the Government, the Court is convinced Debtors' actions were intentional efforts to evade income taxes. The fact Debtors' fraudulent activities have spanned over more years than those pres-

**10.** *Toledano v. C.I.R.,* 362 F.2d 243, 247 (5th Cir.1966); *In re Harris,* 49 B.R. 223, 226 (Bankr. W.D.Va.1985); *Kirk v. United States (In re Kirk),* 98 B.R. 51 (Bankr.M.D.Fla.1989).

**11.** *Korecky v. C.I.R.,* 781 F.2d 1566 (11th Cir. 1986); *Biggs v. Commissioner,* 440 F.2d 1, 6 (6th Cir.1971).

**12.** *Patton v. C.I.R.,* 799 F.2d 166 (5th Cir.1986); *Merritt v. Commissioner,* 301 F.2d 484 (5th Cir. 1962).

**13.** Mr. Kirk never produced any such documentation.

**14.** I.R.C. § 6653(b) states if any part of the underpayment of tax is due to fraud, the fraud penalty applies to the entire underpayment.

ently at issue tends to reinforce the Court's finding of fraud on the part of Debtors.

## SUBSTANTIAL UNDERSTATEMENT PENALTY

IRS imposed the substantial understatement penalty pursuant to Section 6661 of the I.R.C. on Debtors' 1983 and 1984 tax returns. The penalty is imposed when a taxpayer's taxable income is understated by more than $5,000.00 or 10% of the tax required to be shown on the return, whichever is greater. The understated income amount is reduced if there is "adequate disclosure" of an item or "substantial authority" for the taxpayer's position regarding the item. I.R.C. § 6661(b)(2)(B).

"Adequate disclosure" of an item requires a taxpayer to reference Section 6661 on the return and to provide sufficient information to alert IRS as to the controversy surrounding the item.[15] "Substantial authority" requires taxpayers to provide authority supporting their position which substantially outweighs the contrary position.[16]

■ Debtors contend their understated income should be reduced [17] by the amount of their disability exclusion. They argue (1) the disability exclusion was "adequately disclosed" or (2) there was "substantial authority" for claiming the disability exclusion. The Court disagrees. Debtors did not meet the "adequate disclosure" requirements. "Adequate disclosure" requires more than the mere showing of the disability exclusion on the tax return.[18] Debtors failed to make any reference to Section 6661 nor did they provide any information to alert IRS as to the possible controversy surrounding the exclusion.

Debtors also failed to meet the "substantial authority" exception. Debtors reliance on *Christensen v. United States*, 57 A.F. T.R. 2d (P–H) 995 (1986) does not constitute substantial authority. First, at the time

Debtors filed their returns *Christensen* was still pending, therefore it could hardly be considered legal authority, much less "substantial authority" for Debtors' position. Second, *Christensen* was ultimately decided contrary to Debtors' position. The Court would also note that when the case was ultimately decided contrary to Debtors' position, it does not appear from the record Debtors made any effort to correct their returns by amending them to include the entire pension as taxable.

## NEGLIGENCE PENALTY

■ IRS imposed the negligence penalty pursuant to I.R.C. § 6653(a)(1) against the Debtors for the 1985 tax year. Debtors concede the negligence penalty applies to all 1985 adjustments except to the exclusion of pension income as disability income. It is again Debtors' contention *Christensen* provided "substantial authority" for the disability exclusion, therefore, Debtors' exclusion was reasonable and not negligent. The Court finds Debtors' reliance on *Christensen* was not reasonable and the negligence penalty appropriate given the circumstances on which Debtors claimed the exclusion.

## GAIN ON STOCK SALE

■ Debtors contend IRS improperly computed the gain on the sale of stock and then taxed the gain incorrectly at the highest taxable rate. IRS computed the gain on the sale of Debtors stock by allowing Debtors no basis or holding period in the stock. This resulted in the gain being equal to the sales price of the stock and such gain being taxed at the short term capital gain rate. Debtors argue IRS could have easily obtained information regarding the date and amount for which Debtors purchased the stock thereby giving Debtors a basis in the stock and a holding

---

**15.** Treas.Regs. § 1.6661–4; Rev.Proc. 83–21, 1983–1 Cum.Bul. 680; Rev.Proc. 84–19, 1984–1 Cum.Bul. 433.

**16.** H.R.Conf.Rep. No. 97–760 at 575 (1982), U.S. Code Cong. & Admin.News 1982, p. 781 1982–2, C.B. 600, 650.

**17.** For the purposes of determining substantial understatement penalty only.

**18.** Treas.Regs. *supra* note 15.

period sufficient to qualify for long term capital gain treatment. While it may be true IRS could have obtained such information, it had no duty to do so. The burden of proving the basis and holding period of the stock is on Debtors.[19]

The Court finds IRS' computation of tax on gain from Debtors' sale of stock appropriate. IRS requested information from Debtors a number of times and Debtors failed to provide the documentation necessary to afford themselves a more favorable tax treatment on the sale of the stock. Debtors cannot now expect this Court to recompute the tax on their gain with no proof IRS' computation is wrong.

### INTEREST

Debtors' objection to interest calculated on the penalties imposed by IRS is without merit. Inasmuch as the Court has overruled Debtors' objection as to the civil fraud penalty and the negligence penalty, the interest computed on those penalties is proper pursuant to I.R.C. § 6653(b)(1)(B) and § 6653(a)(1)(B) respectively. Based on the foregoing, it is

ORDERED, ADJUDGED AND DECREED Debtors objection to IRS' claim is overruled and the claim is allowed.

DONE AND ORDERED.