In re **HILLSBOROUGH HOLDINGS CORPORATION, et al., Debtors.**

**Hillsborough Holdings Corporation, et al., Plaintiffs,**

v.

**United States of America, Defendant.**

**Bankruptcy Nos. 89–9715–8P1, to 89–9746–8P1, 90–11997–9P1. Adversary No. 91–313.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

March 20, 2003.

Stephen D. Gardner, New York City, James D. O'Donnell and Renee D. Grosse, Jacksonville, FL, Don M. Stichter, Tampa, FL, for Plaintiffs.

Robert L. Welsh, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC, for Defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION (ISSUE 35 FOR THE TAX YEARS 1992 THROUGH 1994)

ALEXANDER L. PASKAY, Chief Judge.

These are the confirmed Chapter 11 cases of Hillsborough Holding Corporation and its thirty-two wholly owned subsidiaries (Debtors) and the matter under consideration is a claim set forth in Count VII of the Amended Complaint entitled "Amended Complaint for Determination of Tax Liability and for Determination of the Validity, Extent, and Priority of Liens" against the United States of America (Government). Based on the stipulation of the parties, the immediate matter under consideration is Issue # 35 covering the fiscal years May 31, 1992 through and including the fiscal year, which ended on May 31, 1994. The precise and discreet issue under consideration, in this Memorandum Opinion, is whether certain professional fees, as more fully described below, incurred during the post-petition period of the Chapter 11 cases of the Debtors are deductible by the Debtors under Section 162 of the Internal Revenue Code (IRC) or whether they must be capitalized under Section 263 of the IRC.

Prior to this trial, conducted on October 24, 2002, the parties filed "Parties' Joint Fact Stipulation Re: Issue # 35 in Fiscal Years Ended 5–31–92 Through 5–31–94 Scheduled For Trial on October 24, 2002" (Doc. No. 296) (Stipulation). At the trial, this Court heard testimony of witnesses considered the documents offered and introduced into evidence, and now makes the following findings of fact and conclusions of law.

### Background

Jim Walter Corporation (JWC), the Debtors' predecessor, was incorporated in 1955. Over the years, JWC, through various subsidiaries, grew and expanded through a number of different business ventures, including the acquisition and disposition of numerous other corporations and business lines. In 1987 and 1988, JWC was involved in a leveraged buyout (LBO). The LBO resulted in the acquisition of JWC by a group of private investors led by Kohlberg Kravitz & Roberts (KKR), accomplished through the formation of the Debtor, Hillsborough Holdings

Corporation (HHC) and its various subsidiaries. (Stipulation ¶s 8–11).

Subsequently, on December 27, 1989, the Debtors filed their voluntary Petitions for Relief under Chapter 11 of the Bankruptcy Code. One of the motivating factors for seeking relief under the Bankruptcy Code was the pending asbestos-related personal injury litigation which prevented the Debtors from pursuing a refinancing or from selling their assets to reduce their debt, which together with turmoil in the high yield bond markets, depressed the bid value for the Debtors' notes. (Joint Exh. S & T). It is undisputed that the asbestos-related personal injury litigation was very complex and involved thousands of claimants and theoretically hundreds of millions of dollars in actual and potential claims.

During the course of their bankruptcy cases, the Debtors initiated this Adversary Proceeding on May 14, 1991, by the filing of "Complaint for Determination of Tax Liability and for Determination of Validity, Extent, and Priority of Liens," requesting a determination of the validity, extent and priority of the claims filed by the Internal Revenue Service (IRS) for federal income taxes, penalties, and/or interest alleged to be due and owing for certain tax years.

The Debtors emerged from bankruptcy pursuant to the provisions of a Consensual Plan of Reorganization (Plan), confirmed on March 2, 1995, and effective on or about March 17, 1995. The Plan restructured the debt and equity interests of the Debtors and allowed them to continue as a group of restructured corporations. *See* Plan, Joint Ex. B. Pursuant to the terms of the Plan, this Court retained jurisdiction to resolve the issues presented by this Adversary Proceeding.

### Summary of Issue # 35

Pursuant to a Statutory Notice of Deficiency dated June 6, 1998, and IRS Forms 5701 and 886–A prepared in connection therewith (Joint Ex. H), the IRS disputed the deductibility of the Debtors' professional fee expenses indicated by the following table:

| Issue | # Tax year ending | Description | Amount |
|-------|-------------------|-------------|--------|
| 35 | 5–31–92 | Professional fee expense | $1,635,509 |
| 35 | 5–31–93 | Professional fee expense | $3,723,411 |
| 35 | 5–31–94 | Professional fee expense | $3,024,948 |
| | | **TOTAL** | **$8,383,868** |

Specifically, the IRS disallowed some of the deductions because the IRS indicated that the Debtors had not established that the professional fees were "ordinary and necessary" expenses paid or incurred in the tax years 1992 through 1994 in carrying on the Debtors' business.

On August 3, 1998, the Debtors filed their Motion to Amend Second Amended Complaint, with the proposed Amended Complaint, which disputed the IRS's adjustments for the tax years, ended May 31, 1992, through May 31, 1994, pursuant to the Statutory Notice of Deficiency (Doc. No. 205). On August 11, 1998, this Court granted said Motion and deemed the Amended Complaint filed. Thereafter, the IRS filed its Answer denying the amounts of disputed deductions (Doc. No. 212). On October 24, 2002, this Court conducted a final evidentiary hearing to determine the nature of the professional fee expenses in dispute.

It is without dispute that the Debtors have filed consolidated federal income tax returns for fiscal year ended May 31, 1988 and all years thereafter. The Debtors filed consolidated federal income tax returns for fiscal years ended May 31, 1992 through May 31, 1994, in which they de-

duced as an expense the amounts at issue in Issue No. 35 on those returns. (Joint Ex. E).

The only matter remaining before this Court is whether the professional fees and expenses are deductible, as claimed by the Debtors, or are required to be capitalized, as contended by the IRS. (Stipulation ¶ 16). The categories of professional fees and expenses have been stipulated to by the parties and are identified on Joint Exhibits F and F–1. Joint Exhibit F is the category of expenditures for Creditors' Committees' and other non-debtor committees' professional fees at issue. Joint Exhibit F–1 is the category of expenditures for the Debtors' professional fees at issue. The parties have stipulated to the categories, descriptions, as well as the amounts reflected in each of these Joint Exhibits as accurate. (Stipulation ¶ 15). Moreover, the parties have agreed that the Debtors have previously paid all expenses in the indicated tax years and that the issue is the deductibility of the same.

In these regards, the parties agreed, prior to the trial, that the expenses identified in Joint Exhibit F–1 as Mid–State Trust III Financing category, should be capitalized over the years 1992 through 1999. (Stipulation ¶ 19). The parties further agreed to an amortization schedule as described in Joint Exhibit I.

### Legal Analysis and Findings

It should be noted that this Court made a determination regarding Count III of the Amended Complaint, which was previously litigated in this Adversary Proceeding, which included Issue Nos. 78 and 79 for the tax years 1990 and 1991. Issue Nos. 78 and 79 also dealt with whether certain professional fees incurred post-petition and pre-confirmation were properly deductible by the Debtors under Section 163 of the IRC or whether they should have been capitalized under Section 263 of the IRC. This Memorandum Opinion is reported at *Hillsborough Holding Corp. v. U.S. (In re Hillsborough Holdings Corporation, et al.)*, 99–1 U.S.T.C. ¶ 50,514, p. 88,382 (U.S.B.C.M.D.Fla.4/7/99). This Court specifically adopts its holding in that Memorandum Opinion and incorporates the same by reference.

■■■ Section 162(a) of the IRC provides in relevant part as follows: "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." The taxpayer bears the burden of showing its eligibility for a particular deduction. *Patton v. Commissioner*, 799 F.2d 166, 169 (5th Cir.1986). In establishing the allowability of a deduction, the taxpayer must demonstrate that the expense was incurred for "carrying on [its] trade or business" and was both "necessary" and "ordinary." *See Commissioner v. Lincoln Savings and Loan*, 403 U.S. 345, 91 S.Ct. 1893, 29 L.Ed.2d 519 (1971). Ordinary has the connotation of "normal, usual, or customary" and the transaction giving rise to the expense must be related to the nature and scope of the particular business of the taxpayer. *Deputy v. du Pont*, 308 U.S. 488, 494–496, 60 S.Ct. 363, 84 L.Ed. 416 (1940).

■■■ In contrast to an "ordinary and necessary" business expense, capital expenditures may not be immediately deducted but must be amortized or depreciated over the life of the assets to which they apply. *See* 26 U.S.C. §§ 263, 167(a). *See also INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 112 S.Ct. 1039, 117 L.Ed.2d 226 (1992). Capital expenditures are usually expenditures that result in long-term benefit, whether tangible or intangible. *INDOPCO*, 503 U.S. at 86–87, 112 S.Ct. 1039, citations omitted. However, if there

is no ascertainable specific asset or useful life, the capital expenditure will ordinarily be deductible when the corporation is dissolved. Thus, a capital expenditure that confers an intangible benefit on the corporation, such as creating or enhancing goodwill or enabling the business's continued survival, is neither amortizable nor depreciable. *See Commissioner v. Tellier,* 383 U.S. 687, 689–690, 86 S.Ct. 1118, 16 L.Ed.2d 185 (1966); B. Bittker and L. Lokken, Federal Taxation of Income, Estates and Gifts, 200–100 (2d ed.1989). In *INDOPCO,* the Supreme Court observed that distinctions between current expenses and capital expenditures are those of degree, not kind, and each case turns on its special facts. *INDOPCO,* 503 U.S. at 86, 112 S.Ct. 1039.

In the context of business reorganization, in both the bankruptcy context and outside of the bankruptcy context, it has been generally held that such expenses are not ordinary deductible business expenses within the meaning of Section 162 of the IRC. *See Missouri–Kansas Pipe Line Co. v. Commissioner,* 148 F.2d 460 (3d Cir. 1945) (expenses relating to recapitalization and reorganization of corporation cannot be deemed ordinary expenses); *Placid Oil Co. v. Internal Revenue Service,* 988 F.2d 554 (5th Cir.1993) (fees and expenses associated with administering bankruptcy proceeding are not deductible under Section 162).

### Whether Fees of Professionals Hired by the Various Committees are Deductible

■ Applying the foregoing principles, this Court finds as follows: With respect to all of the professional fees paid by the Debtors for services rendered by various committees during the bankruptcy organization (the described Joint Exhibit F), this Court is satisfied that these expenses related solely to the bankruptcy reorganiza-

tion and not to the day-to-day business of the Debtors, therefore they are not deductible under Section 162 of the IRC. This ruling is consistent with this Court's prior decision.

Out of the fourteen categories, six categories dealt solely with issues that were related to the bankruptcy case, i.e., "bankruptcy administration," "Debtors' plan of reorganization," "Creditors' plan," "miscellaneous plans," "consensual plan," and "trade post-petition agreement." The case law is clear that these expenses are related to the restructuring of a corporation, which is an "extraordinary" event outside the scope of a corporation's usual trade or business activities. *Mills Estate, Inc. v. Commissioner,* 206 F.2d 244, 246 (2d Cir. 1953).

For the balance of the categories, the Debtors argue that this Court should apply the *Lohrke* test, a two-part test to determine whether a taxpayer is entitled to deduct payment of another person's expenses, aptly named after *Lohrke v. Commissioner,* 48 T.C. 679, 1967 WL 977 (1967). In the first prong, a court must ascertain the purpose or motive, which caused the taxpayer to pay the obligations of the other person, and in the second prong, the court must judge whether it is an ordinary and necessary expense of the taxpayer's trade or business. *Lohrke,* 48 T.C. at 688. The Debtors assert that once the bankruptcy cases were filed, the Debtors continued with the operations of their business and therefore, such categories as "veil piercing litigation," "claims disputes," "sale of assets," and "ordinary course business," should all be expenses that are properly deductible for professional fees of the various committees because in order to continue the Debtors' business, the Bankruptcy Code, specifically 11 U.S.C. §§ 327 and 110, requires debtors to pay for creditors' professional fees.

This Court rejects this argument because the Debtors cannot escape the fact that "but for" the original bankruptcy filings, there would not have been these expenses incurred. Consistent with the *IN-DOPCO* decision, this Court is satisfied that all of these expenses were related to the Debtors' reorganization and created a benefit for the future operations of the Debtors, which are treated as capital expenses. *INDOPCO*, 503 U.S. at 89–90, 112 S.Ct. 1039.

### Whether Fees of Professionals of the Debtors' Counsel are Deductible

 Applying the foregoing principles to the non-creditor professional fees (Joint Exhibit F–1), this Court is satisfied that the following categories are properly deductible pursuant to Section 162 of the IRC: "veil piercing litigation," "claims disputes," and "ordinary course business." However, with respect to "ordinary course business," this Court is satisfied that a portion of these services are not deducible pursuant to Section 162 of the IRC based on both the testimony at trial, together with Joint Exhibit J. This time is categorized as "fee applications" and "review footnotes to financial statements." These two categorizes were incurred not in the ordinary course of the Debtors' business but as a result of the reorganization and therefore, should be capitalized.

 Regarding the balance of the categories, those relating solely to the bankruptcy cases: "bankruptcy administration," "Creditors' plan," "consensual plan," "value sharing plan," "Debtors' plan of reorganization," "miscellaneous plans," and "trade post-petition agreement," this Court is satisfied that these expenses are not ordinary deductible expenses within the meaning of Section 162 of the IRC. This Court is satisfied that these expenses inured to the benefit of the Debtor-corporations for the duration of their existence.

Within this general description of services related solely to the bankruptcy cases, the Debtors argue that the categories described as "value sharing plan," "Debtors' plan of reorganization," "miscellaneous plans," and "trade post-petition agreement," as well as "bank settlement agreement" were all abandoned projects, and thus, pursuant to *A.E. Staley Manufacturing Co. v. Commissioner*, 119 F.3d 482 (7th Cir.1997), as well as other cited cases, these expenses are deductible and should not be capitalized. The IRS contends that this Court cannot subdivide bankruptcy expenses into deductible and capital expenses since the filing was a unitary event that was a "radical and global event," which produced long-term benefits. Thus, according to the IRS, it is inappropriate to subdivide the bankruptcy related categories. This Court is satisfied that the reorganization of the Debtors was an event outside the scope of its ordinary business, and thus, even though these bankruptcy related projects were ultimately abandoned, each category was directly related to the bankruptcy case and thus was outside the trade and business of the Debtors.

 Regarding the categories of "sale of assets" and "Wedlo transaction," this Court is satisfied that based upon the testimony deduced at trial, both of these expenses were abandoned and could have occurred outside of the Debtors' reorganizations, and are thus properly deducible pursuant to Section 162 of the IRC.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the parties shall submit a joint statement based upon the foregoing, calculating the precise amount of the IRS's allowable claim and a final judgment representing the ultimate resolution of Issue

35 as set forth in Count VII of the Amended Complaint.