STEVEN D. STRICKLAND AND DORIS K. STRICKLAND, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Strickland v. Commissioner
Docket No. 2464-92
United States Tax Court
T.C. Memo 1994-5; 1994 Tax Ct. Memo LEXIS 15; 67 T.C.M. (CCH) 1927; January 6, 1994, Filed *15 Decision will be entered under Rule 155. R determined a deficiency based on Ps claimed deductions and loss. R asserted that in preparing their return, Ps intentionally made numerous mistakes which amounted to fraud. Held: Ps' business deductions and loss redetermined; Held, further, R's determination of the addition to tax for fraud under former sec. 6653(b)(1)(A) and (B), I.R.C., not sustained; R's determination of the addition to tax for substantial understatement of liability under former sec. 6661, I.R.C., sustained. For petitioners: William E. Frantz. For respondent: Larry D. Anderson. NIMS
NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined a deficiency in, and additions to, petitioners' joint Federal income tax liability as follows: Additions to Tax -- Sections Year
Deficiency
6653(b)(1)(A)
6653(b)(1)(B)
6661 1986
$ 7,417
$ 5,563 *
$ 1,854
* 50 percent of the interest due on $ 7,417.
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are: *16 (1) Whether petitioners are entitled to deduct $ 14,494 in business expenses; (2) whether petitioners correctly reported a $ 7,291 loss from the sale of a tractor-trailer rig; (3) whether petitioners are liable for an addition to tax for fraud pursuant to section 6653(b)(1)(A) and (B); and (4) whether petitioners are liable for additions to tax for a substantial understatement of liability pursuant to section 6661. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations of facts and attached exhibits are incorporated herein by this reference. Petitioners Steven D. Strickland (Mr. Strickland) and Doris K. Strickland (Mrs. Strickland) resided in Winder, Georgia, when they filed their petition. Mrs. Strickland is employed by the Internal Revenue Service as a tax examining assistant. During 1986 she had a Civil Service rating of GS-7. In 1978 Mrs. Strickland attended a 3-week training course which briefly reviewed IRS forms and schedules. Her work required a familiarity with Schedules A,B,C, and D of Form 1040. As part of her training she received instruction on how to prepare Schedule D. The instructions which she received included figures *17 that were given to her on the sale and cost of assets and where to put the figures on Schedule D. There was no instruction as to how to arrive at those figures. Mrs. Strickland's job responsibilities were limited to reviewing and answering taxpayer correspondence and "math-verifying" tax returns. Tax returns were not referred to her for examination. The correspondence she was responsible for was limited to form requests, inquiries about misapplication of taxpayer payments, math error notices, and taxpayer responses to IRS inquiries. All of her work was subject to quality review, but it was only occasionally reviewed. When her work was reviewed, the review sometimes revealed errors. In her work Mrs. Strickland often referred to IRS Publication 17 (instructions to taxpayers on how to prepare their returns) and the Internal Revenue Manual. When these two sources could not provide the information she needed, she obtained the information from her supervisor. Mrs. Strickland's math-verifying return activity consisted of checking the arithmetic on the return by using a calculator, and verifying the proper amount of tax by using the tax tables. Mrs. Strickland prepared petitioners' *18 1985 and 1986 joint Federal income tax returns. At the time she prepared petitioners' 1986 return, she and Mr. Strickland were having matrimonial difficulties and were living apart. Mrs. Strickland had some of Mr. Strickland's business records, and when she was preparing the return was able to ask her husband a few questions about his expenses. From October of 1985 until approximately June 10, 1986, Mr. Strickland was self-employed as a factory tractor-trailer rig (rig) driver owner/operator for North American Van Lines (North American). He hauled commercial transport items throughout the mainland of the United States. On October 21, 1985, Mr. Strickland purchased a rig from North American for a cash sale price of $ 53,172.25. He made a $ 1,750 downpayment and financed the balance with North American. The balance was to be paid in 234 weekly installments of $ 305.74 preceded by four weekly interest-only payments of $ 80.92. The interest-only payments were to begin on November 15, 1985. (The parties have stipulated that the interest-only payments began on December 13, 1985. The Sales Contract between Mr. Strickland and North American, which is part of the record, states the *19 interest-only payments were to have begun on November 15, 1985, and the principal and interest payments were to have begun on December 13, 1985.) On approximately June 10, 1986, Mr. Strickland resold the rig to North American for $ 45,709. Petitioners' 1985 return, which is not at issue, reflected a $ 5,000 deduction pursuant to section 179. It also reflected a $ 12,000 rig depreciation deduction. The 1985 return also included a completed Form 3468, Computation of Investment Credit, but reported zero on line 20, "Total Credit Allowed." The 1986 return included a completed Form 4255, Recapture of Investment Credit, showing a total increase in tax of $ 2,880. However, line 15 of the form, if properly completed, would have permitted petitioners to reduce this amount to zero since they received no tax benefit from the investment credit on their 1985 return. The record contains no evidence that petitioners attempted to carry back any amount of investment credit to any year before 1985. The 1986 return includes a completed Schedule D, Capital Gains and Losses, on which is reported a $ 7,291 loss on the disposition of the rig. Petitioners used the unadjusted cost of the rig ($ 53,172.25) *20 which they "rounded" to $ 53,000 on their return, in computing their loss on Schedule D. OPINION In considering respondent's deficiency determination, we will discuss each disputed item in turn, beginning with the disposition of the rig. Mrs. Strickland reported the disposition on Schedule D. She claimed the $ 7,291 difference between the rig's reported cost of $ 53,000 and its selling price of $ 45,709 as a loss. At the examination the IRS auditor noted a discrepancy in the figures used to report the rig's cost on Schedule D and the figures used to report the rig's cost on Form 4255-Recapture of Investment Credit. This discrepancy led the auditor to expand the audit to include petitioners' Schedule D. The auditor concluded that Mrs. Strickland had used the cost of the rig instead of its adjusted basis in determining whether the disposition resulted in a gain or a loss. The auditor concluded that the cost of the rig must be reduced by both the deduction under section 179 (Election to expense certain depreciable business assets) and the depreciation deducted in 1985 to arrive at the rig's adjusted basis of $ 36,172. She took the position that the difference of $ 9,537 between *21 the rig's adjusted basis of $ 36,172 and its selling price of $ 45,709 should have been reported as a gain. Mrs. Strickland testified that she knew she was required to use either Schedule D or Form 4797, Supplemental Schedule of Gains and Losses, in reporting the disposition, but could not discern from the IRS instructions which form was required. She chose Schedule D which asked for the cost and selling price of the rig, the unadjusted amounts of which she accurately reported. Schedule D, unlike Form 4797, does not contain a column in which to reflect depreciation; thus Mrs. Strickland did not subtract depreciation from the rig's cost. Nor did she subtract the previously claimed section 179 expense of $ 5,000. She contends that her only mistake was choosing the wrong form on which to report the disposition. Petitioners do not dispute respondent's correction of petitioners' method of reporting the disposition of the rig. We therefore sustain respondent's determination of a $ 9,537 gain on the disposition. The remaining disputed items are claimed Schedule C deductions. Deductions are strictly a matter of legislative grace, and petitioners bear the burden of proving that they *22 are entitled to any deductions claimed. New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). Petitioners deducted $ 14,355 of "truck expenses" consisting of gasoline and miscellaneous payments. Each week Mr. Strickland received a weekly commission statement from North American which reflected income and some expenses associated with his business. Based on these weekly commission statements, Mrs. Strickland calculated gasoline expenses of $ 7,599 using an average price of $ 1.12. Respondent determined the average price of the gasoline to be $ .80 per gallon and disallowed a portion, but not all, of the claimed gasoline expense. Petitioners have submitted an Interstate Commerce Commission fuel survey for the applicable period showing the average price of full-service gasoline as $ 1.10. Mr. Strickland testified that he always used self-service gasoline. Petitioners produced a few receipts showing gas purchases at a cost ranging from $ .70 to $ 1.10 per gallon. None showed $ 1.12 per gallon as the price for self-service gas. Petitioners, rather than keeping accurate records, have simply picked a figure most favorable to themselves. We *23 sustain respondent's allowance of $ .80 per gallon. Also, as part of their "truck" expenses, Mrs. Strickland deducted all of the rig installment payments, which amounted to $ 6,726, and which included both principal and interest. On line 17(b) of Schedule C, Mrs. Strickland again deducted the interest portion of the installments, totaling $ 1,780. Respondent determined that none of the "truck payments" should be allowed, but allowed the interest portion to be deducted. Additionally, respondent allowed petitioners an additional $ 136 as an interest expense. Mrs. Strickland testified that she was unaware that she was not entitled to deduct the principal portion of the rig loan repayment and that she was unaware that she deducted the interest twice. She further testified that these errors were her mistake. We sustain respondent's disallowance of the rig payments. Mrs. Strickland deducted $ 2,502 as insurance, which included $ 240 for worker's compensation insurance. On a separate line, Mrs. Strickland again deducted $ 240 as worker's compensation insurance. Petitioners subscribed to North American's group insurance policy which included both health and life insurance. Respondent *24 disallowed all of the life insurance premiums. Respondent also disallowed the medical insurance premiums on the ground that they are deductible on Schedule A and not on Schedule C, and, as the auditor's examination did not include Schedule A, the medical insurance premiums were totally disallowed. Respondent allowed a total of $ 1,840 for insurance which included $ 240 for workers' compensation. Mrs. Strickland maintains that she was unaware that the group policy included both health and life insurance until the IRS examination. Petitioners argue that medical insurance premiums are deductible and should not be disallowed solely because they were deducted on the wrong schedule. However, petitioners deducted a substantial amount of medical expenses on Schedule A and they have not shown that the insurance premiums claimed on Schedule C were not a duplication of amounts claimed on Schedule A. We therefore sustain respondent's disallowance of medical and life insurance premiums. Petitioners deducted $ 1,211 as supplies, and $ 770 for tolls. (The parties stipulated that petitioners claimed a deduction for supplies in the amount of $ 1,737. Petitioners' Schedule C of their 1986 *25 Federal Income Tax Return, which is part of the record, clearly states "Supplies $ 1,211". We note that the line directly above Supplies reads "Repairs $ 1,737".) Respondent allowed a combined total of $ 703 for supplies and tolls. Since petitioners failed to substantiate any greater amount, we sustain respondent's determination. In preparing the return Mrs. Strickland deducted $ 3,225 for travel and entertainment. Respondent determined that Mr. Strickland was away from home for 125 days and allowed $ 14 per day for meals, for a total of $ 1,750. Respondent also allowed petitioners a deduction of $ 483 for lodging, based upon receipts. The total deduction for travel and entertainment allowed by respondent was $ 2,233. Mr. Strickland testified that he was home only three days from January 1 to June 10, 1986, because the only way he could have gotten to Atlanta was if he had a run going from the North to Miami. He spent the remaining days on the road. We accept this testimony as true, and find that Mr. Strickland was away from home for 158 days during that period. Since respondent has conceded that petitioners are entitled to deduct $ 14 per day for Mr. Strickland's meals while *26 away from home, his meal allowance will be accordingly increased. We decline to increase Mr. Strickland's lodging allowance since petitioners have failed to substantiate any additional amount. In preparing the return Mrs. Strickland deducted $ 2,200 as a wage expense reflecting wages paid by Mr. Strickland to individuals, whom he referred to as "lumpers", who helped him unload his trailer. Mr. Strickland testified that he based this figure on how many stops he made and how many loads for which he used the lumpers in unloading. Mr. Strickland testified that lumpers customarily receive $ 50 in cash for each trailer they unload. We accept that Mr. Strickland hired lumpers, since he could not have unloaded the trailer by himself, and that he paid them the customary $ 50 per load, although he kept no record of the number of lumpers hired and the amounts paid. Respondent concedes that Mr. Strickland paid these lumpers an undetermined amount to help him unload his trailer. If a taxpayer unquestionably incurs an expense that he would be entitled to deduct in some amount, but the amount is not adequately substantiated, we may estimate the amount of the expense when we are convinced *27 from the record that it was incurred by the taxpayer, and there exists a basis upon which to make an estimate. Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930). However, if a reasonable estimate of the expense is required we may, if necessary, bear heavily upon the taxpayer whose inexactitude is of his or her own making. Id. at 543-544. Applying the Cohan rationale, and in the absence of any receipts, we estimate that Mr. Strickland paid $ 1,000 as wages to lumpers. See Lewis v. Commissioner, T.C. Memo. 1982-478 (Cohan rule applied to estimate payments to loaders and unloaders). In preparing the 1986 return Mrs. Strickland deducted $ 300 for laundry expense, $ 50 for postage expense and $ 1,081 for utility expense. Respondent has allowed no laundry expense, $ 24 for postage, and $ 157 for utilities, based upon the substantiation (or lack thereof) which petitioners submitted at the examination. Since petitioners produced no additional substantiation at trial we sustain respondent's determination. In this connection, we note that section 274(d) does not permit us to estimate *28 an allowance of laundry expense as a travel expense, although it seems probable that Mr. Strickland incurred some expense in this category. Petitioners deducted $ 45 for union dues. Originally respondent allowed only $ 36, but has conceded that petitioners are entitled to a $ 45 deduction. We next consider respondent's argument that Mrs. Strickland fraudulently prepared petitioners' 1986 return. Respondent argues that Mrs. Strickland knowingly misreported the disposition of the rig, claimed unsubstantiated deductions and claimed some deductions twice and that, considered as a whole, her actions were fraudulent. Petitioners counter that any mistakes Mrs. Strickland made were honest mistakes. Respondent bears the burden of proof as to the issue of fraud. Rule 142(b). Fraud exists when (1) there is an underpayment of taxes, and (2) the taxpayer knowingly underpaid the taxes with the specific intent to evade a part of the taxes underpaid. Wright v. Commissioner, 84 T.C. 636, 639-643 (1985). Thus, in order to prove fraud there must be an underpayment, and respondent must show that the taxpayer intended to evade a tax known to be due on at least *29 part of the underpayment by conduct designed to conceal, mislead, or otherwise prevent the collection of such tax. Patton v. Commissioner, 799 F.2d 166, 171 (5th Cir. 1986), affg. T.C. Memo. 1985-148; Recklitis v. Commissioner, 91 T.C. 874, 909 (1988). A fraudulent understatement of taxes can be accomplished by an overstatement of deductions as well as by an omission of income. Estate of Temple v. Commissioner, 67 T.C. 143, 161 (1976). The existence of fraudulent intent is a factual question to be decided on the basis of an examination of the entire record. Recklitis v. Commissioner, supra at 909; Grosshandler v. Commissioner, 75 T.C. 1, 19 (1980). Fraud may never be presumed but must be established by affirmative evidence. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). This case involves respondent's deficiency determination for a single year, 1986, and, although numerous mistakes were made by petitioners on their return, the issue of fraud turns essentially on *30 the manner in which Mrs. Strickland, the return preparer, reported the sale of her husband's tractor-trailer rig. By petitioners' using the cost of the rig, without adjustments, the sale resulted in a loss. On their 1985 return petitioners claimed a $ 5,000 deduction under section 179, and $ 12,000 as a depreciation deduction. On their 1986 return petitioners also reported $ 2,880 as an investment credit recapture, which was not required and which Form 4255 would have revealed as not required if Form 4255 had been properly completed by petitioners. As already noted, Mrs. Strickland testified that she could not discern from IRS instructions which form to use in reporting the sale, and used Schedule D which simply called for cost and selling price, the unadjusted amounts as to the rig she accurately reported. Respondent makes much of the fact that Mrs. Strickland was an IRS employee who because of her position should have known how to prepare her return correctly. Of course, all taxpayers are expected to prepare their returns correctly, or at least make an honest effort to do so. As a tax examining assistant, holding a civil service rating of GS-7, Mrs. Strickland was in fact *31 at or near the lowest rank in the IRS professional or semiprofessional hierarchy. Her duties were essentially limited to math-checking tax returns and answering telephonic and written inquiries from taxpayers which were unrelated to substantive tax matters. Her brief and sketchy training for her position related mainly to a familiarization with Publication 17 (a return preparation procedural pamphlet available to all taxpayers), and Schedules A through D of Form 1040. Thus, we do not believe that Mrs. Strickland acquired any special expertise in substantive tax matters solely by virtue of her position. In early 1987, when Mrs. Strickland was preparing the 1986 return, she and Mr. Strickland were encountering matrimonial difficulties and were living apart. Mrs. Strickland received minimal assistance from her spouse in preparing the return. The return in question was a random computer-selected return for audit, based upon "discriminate information function," or DIF, scoring. Based upon the DIF scoring the return was sent to an IRS office auditor so that he or she could look into the claimed child care credit and, with regard to the 1040's Schedule C items relating to Mr. Strickland's *32 truck business, including the claimed truck expenses, insurance expense and interest expense. The IRS auditor was led to look further when her eye fell upon the investment credit recapture item which, as we have pointed out, was unnecessarily reported, and therefore a mistake in the Government's favor. In short, all of the items giving rise to respondent's determination of fraud were reflected on petitioners' 1986 return. Thus there was no affirmative act of concealment. Admittedly, Mrs. Strickland's return preparation ability, when measured by a standard of skill to be expected of a competent return preparer (which her job apparently did not require her to be), falls somewhere between mere incompetence and gross negligence. But based on the record before us, respondent has not established fraud. The record does not reveal a sufficient element of concealment or deception to justify the imposition of the fraud penalty. Petitioners' infractions were all too clearly revealed on the face of their return. It is, of course, conceivable that petitioners were playing the audit lottery, not expecting their return to be kicked out by the computer. But as we have said before, and say *33 again, suspicion of fraud is not enough. King's Court Mobile Home Park v. Commissioner, 98 T.C. 511, 517 (1992). We think it necessary to note that for unexplained reasons respondent has not seen fit to assert in the alternative the section 6653(a)(1) addition to tax for negligence, although this case would seem to be an obvious case of negligence or disregard of rules or regulations. In section 6653(a)(3), "negligence" is defined as including "any failure to make a reasonable attempt to comply with the provisions of [the Internal Revenue Code]", and "disregard" is defined as including "any careless, reckless, or intentional disregard." These words aptly describe the way petitioners prepared their 1986 return. We turn now to the issue of whether petitioners are liable for the addition to tax for substantial understatement of income tax pursuant to section 6661. Petitioners bear the burden of proof as to this issue. Rule 142(a). Petitioners have presented no evidence and have made no argument regarding respondent's determination of this addition to tax. If, after the adjustments listed above have been made, there is a substantial understatement *34 of income tax, respondent's determination will be sustained. Decision will be entered under Rule 155.